## Mundell *vs.* Hugh and Lloyd Perry.—*June*, 1830.

Where it does not appear, either from the plots themselves, or the surveyor's explanations, what was the object or design of certain lines upon plots returned under a warrant of resurvey, nor from the surveyor's certificate, that he had ever made such locations, it is not competent to shew, that the surveyor laid down such lines for a counterlocation of a tract of land described in the plots; for such lines are a mere nullity.

If testimony, out of the plots and explanations filed with them, could be received, to give name and character to unintelligible locations, it would defeat the object for which plots have been received as part of the pleadings in the cause.

The object and intention of introducing plots in the cause, is to give certainty to the claim and defence, and to apprise the parties, that the locations of other lands are to be used, to illustrate, and support, the location of those under which they claim title. It is to prevent surprise, and therefore it has been the uniform practice of the Courts, to reject evidence as to any object, unless it is located on the plots.

The proprietor of adjacent tract of land, conveyed the younger tracts by metes, and bounds; all the land contained within those metes and bounds, passes to the grantee, although part of the elder tract is embraced in them.

A deed of land executed in the year 1735, to be competent evidence, should appear to have been recorded, according to the provisions of the act of 1715.

In trespass for breaking the plaintiff's close, and cutting down his trees, if the plaintiff fail to prove the cutting his trees, he may still recover for the breach of his close.

Prior to the act of 1825, *ch.* 117, it was the duty of the Court to notice errors apparent on the face of the record, or any legal objections to evidence set out in the record, although they were not brought into the view of the Court below, nor formed any part of the bills of exceptions.

Where the declaration charged that the defendant, the close of the plaintiff's, called ————, situate, &c. broke and entered, and defence having been taken on warrant, and neither the warrant, nor any of the proceedings under it, gave any name to the close of the plaintiff, the Court refused to affirm a judgment rendered for the plaintiff, prior to the act of 1825, *ch.* 117, upon proceedings thus defective on their face.

Appeal from *Prince George's* County Court.

*Trespass quare clausum fregit,* instituted by the appellees, against the appellant, *Thomas Mundell,* on the 9th of April, 1818. The declaration charged that the appel-

lant on the 1st of April, in the year 1817, and on divers days between that day, and the day of impetrating the writ in this case ; the close of the said *Hugh* and *Lloyd,* called ————, situate in the county aforesaid, broke, and entered, &c. and cut down the timber and other trees, &c." Pleas not guilty, and *liberum tenementum.* A warrant of resurvey was issued, without the name of the land to be surveyed, and plots were made, and returned.

1. At the trial the plaintiffs read in evidence the patent of a tract of land called "*Marsham's Rest,*" containing 750 acres more or less, which was patented to one *Richard Marsham* on the 26th of May, 1664; and then offered proof that the plaintiffs were, at the time alleged in the declaration, or the time when the trespasses were alleged to have been committed, and for several years before, in possession of a part of said land called *Marsham's Rest,* and proved the commission of several trespasses, by the tenants of the defendant, in the *locus in quo,* designated on the plots in the cause by a line drawn from black D, to red D, to I, and to black D.

The defendant then for the purpose of showing that the plaintiffs location of *Marsham's Rest,* was not the true location thereof, but that if the said land was truly located, the acts alleged as trespasses proved, would not be found to have been committed within the lines of the said tract of land, but within the lines of a tract called *Quicksale,* which belonged formerly to the defendant, and offered to shew a location on the said plots, beginning at red A, the beginning of a tract of land called *Taylorton,* as so located on said plots, running with yellow shaded lines, around the plaintiffs said location of *Marsham's Rest,* by red D to said red A, as a counterlocation of *Marsham's Rest,* and to produce evidence of the correctness of that location, which was objected to by the plaintiffs on the ground, that it did not appear on the plots, by whom that location had been made, or what land it was, that was thus located, and because there was not on the said plots any explanations of

the said alleged counterlocation. Whereupon the defendant produced another plot, formerly made in the cause, and proved by the clerk, that the plots filed in the cause had been delivered by him under the leave of the Court, to add and amend, to the sheriff of the county, for the purpose of making the amendment; and further proved by the surveyor, that he had received that plot from the sheriff, for the purpose of making the amendment, and that, instead of making the amendment, on that plot, he having been directed by the Court, to combine that plot and explanations with another, that had been made out for the plaintiffs, copied, as he supposed, every thing from that plot so made out for the defendant, and the other plot so made out for the plaintiffs, upon another paper, which is the amended plot in this cause, marked *B*, and intended to have put into the explanations on the new plot, an explanation of the said location, claimed as the defendant's said counterlocation, of the said *Marsham's Rest*, as a location made by the defendant, and supposed he had done so, and that he had returned the said plot, on the first day of this term, and retained in his hands the other former plots, and now at the trial produced them in Court. Whereupon the defendant contended that he had a right to use the said counterlocation of *Marsham's Rest*, as the same is located, and explained in the said defendant's former plot, in the trial before the jury. But the Court was of opinion, and so instructed the jury, that it was not competent for the defendant to use the said alleged counterlocation of *Marsham's Rest*, and that the plaintiff's location thereof, was to be taken as uncontradicted by the defendant, in said cause, and as the true original location of said land. The defendant excepted.

2. The defendant thus, to prove title to the land located on the plots, as a part of *Quicksale*, located as his freehold, read in evidence a patent for the tract of land called *Quicksale*, containing 400 acres, to *Francis Street*, dated 22d October, 1666, and the deed of *Thomas Gantt*, (under

whom the plaintiffs claim,) dated August 5th, 1735, to *Patrick Sim,* under whom the defendant claimed, for a part of the tract called *Quicksale,* containing 90½ acres more or less, which said deed did not appear to have been recorded, and offered to prove that the said *Thomas Gantt,* was at the time of the date of said deed, the owner and holder of the tract, called *Marsham's Rest;* but the Court were of opinion that the deed of the said *Thomas Gantt,* purporting to convey *Quicksale* by name, could not, under such circumstances, convey title to any land that lay within the lines of *Marsham's Rest,* the elder survey, even though said *Gantt* was at the time owner, and holder of both of the said tracts.   The defendant excepted.

3. The Court then, upon the prayer of the plaintiffs, instructed the jury, that the plaintiffs in the event of their failing to prove the trespass by cutting trees, are entitled to recover for the breach of their close, if such fact is proved to the jury.   The defendant excepted, and the verdict and judgment being against him, he prosecuted the present appeal.

The cause was submitted on notes, to BUCHANAN, Ch. J., EARLE, MARTIN, ARCHER, and DORSEY, J.

*Taney,* (Attorney General) and *Mundell* for the appellant. There are three points presented in this case.   The first arising on the *first* bill of exceptions, to wit: whether or not the defendant was entitled to the benefit of his counter-location of *Marsham's Rest.*   It appears from the statement of the evidence that the plaintiffs location of *Marsham's Rest* had been counterlocated by the defendant, and the plot of the same regularly returned to the court, signed by the sheriff and surveyor.   The defendant, therefore, having done all that was required of him, in order to put the plaintiffs to the proof of the truth of their location, ought not to have been deprived of the benefit of his counterlocation, merely because the surveyor had, under a leave of the court,

to add and amend, taken out the plots to copy them all on one piece of paper; the plot having been regularly made out and returned to the court by the surveyor, could not be withdrawn from the cause, unless on the application of the defendant, (which it appears never was done) but still continued as a part of the pleadings in the cause. The transcribing all the plots, and explanations on one piece of paper, which was the object in giving them to the sheriff again, was for the purpose alone, of enabling the jury to understand them better, and was by no means necessary; and any mistake in the surveyor in copying them, must, of necessity, be rectified by reference to the original plots, which were the pleadings filed in the cause. In actions of trespass, the plots returned are always considered as a part of the pleadings. In this case the plaintiffs located their tract of land called *Marsham's Rest,* and the plot of the same was returned by the surveyor to the court. The defendant then counterlocated the said tract, and located his tract called *Quicksale,* shewing that the alleged trespass was committed within the lines of the latter tract. The plot of this counterlocation and location, was likewise returned by the surveyor to the court; both plots were filed, and both parties must have known the situation in which the pleadings stood. The surveys were ended, and the only object in transcribing the plots, was for the convenience of the jury; and the plots, the original pleadings, were for this purpose, put into the hands of the surveyor, an officer of the court, to transcribe. And can it be contended, that a mistake in transcribing them, by the officer of the court, could prove prejudicial to either of the parties; when the originals were in court, by which the error could be rectified, or that the mere making out this plot for the jury could prevent the original plots from being given in evidence to them. The surveyor, in making out this copy for the jury, however, merely omitted the explanations of the plaintiffs counterlocation of *Marsham's Rest,* every thing else being correctly copied. But there was in court at the

same time the defendant's original plot, containing the explanation, omitted in the new plot.   It is therefore contended that there is manifest error in the opinion expressed by the court on this point.

The point arising on the *second* bill of exceptions is this: Whether a man, owning two tracts of land contiguous, and making a conveyance of one by name, and by the metes and bounds therein described, he not only conveys all the tract, named in the conveyance, but a part of the other?   In this case *Thomas Gantt*, under whom the plaintiffs as well as the defendant held, owned both, *Marsham's Rest* and *Quicksale;* and being so seized, executed the deed under which the defendant holds.   He describes the land by metes and bounds.   The defendant had located said deed as the part of the tract called *Quicksale*, for which he took defence; which location was not counterlocated by the plaintiffs, and the court having decided as in the first bill of exceptions, that the defendant could not use his counterlocation of *Marsham's Rest*, and that the plaintiff's location of the same stood undisputed.   The parties therefore stood in court entirely on title; the plaintiffs on their title to the tract called *Marsham's Rest*, and the defendant on his to *Quicksale.* The defendant  then  offered in evidence the said deed from *Thomas Gantt*, the owner of both tracts, to shew that the land on which the trespass had been committed, and which the plaintiff had located as part of *Marsham's Rest*, was included within the metes and bounds, described by the said deed from *Thomas Gantt*, located on the plots.   But the court were of opinion that the said deed purporting to convey *Quicksale* by name, could not convey title to any land that lay within the lines of *Marsham's Rest*.   In which opinion of the court we contend there is error.   It is a principle of law, that every deed or grant, shall be taken most strongly against the grantor, and most in favor of the grantee.   It was certainly the intention of the parties to the deed, that the whole land included in the metes and bounds

therein described, should pass. *Thomas Gantt* was the owner, and in possession of *Marsham's Rest*—the grantee in the deed paid a valuable consideration for it, and it must be supposed that *Gantt* shewed the land to the grantee before the deed was made, and of course pointed out the bounds; and it cannot be supposed that *Gantt* intended to convey less than was contained within the bounds, because it would have been contrary to good faith and honesty, and it cannot be presumed he intended a deception. *Gantt*, in his deed, warrants and defends the land against all persons. This circumstance seems conclusive to shew it was the intention of *Gantt* to convey all the land included within the metes and bounds. In favor of a purchaser, all the land included within the metes and bounds will be presumed to have acquired the name of *Quicksale*, by reputation. Suppose *Marsham's Rest* had included the whole of *Quicksale*, would the deed of *Gantt*, for valuable consideration, have been inoperative? It will not be contended. It would have conveyed the whole, notwithstanding on the principle that the intention is to prevail, and the deed shall be taken most beneficially for the grantee—the reason is the same when only a part is taken away. That part of *Marsham's Rest*, not included within the bounds described by the deed, had acquired the name of *Quicksale* by reputation. In support of these principles we refer the court to *Hawkins vs. Hanson*, *Harr. and M'Hen.* 523, and the cases there cited; and to the case of *Benson vs. Musseter*, 7 *Harr. and Johns.* 208.

*Stonestreet* for the appellees.

The appellees contend that the court did not err in refusing to permit the appellant, the defendant below, to question the correctness of the plaintiff's location of the tract of land called *Marsham's Rest*. It appears from the record and plots as referred to by the appellant in his statement, that the surveyor had fallen into the obvious error of placing the locations made by the plaintiffs, on one piece of paper, and those for the defendant on a separate paper, at a term of

the court long before the trial;—the court, at the request of the counsel on each side, ordered the surveyor to place the whole locations of each on the same paper; and make such amendments as either might require, and the cause was continued. At September term, 1823, the one plot was filed in court, containing all the locations; at least, neither party asked further leave to add or amend. A jury was empannelled, and the trial was proceeded in. It will be observed the two former plots, which separated the locations, were neither of them then in court; nor was that complained of by either side. If the explanation and location by the defendant of *Marsham's Rest* was necessary for his defence, why did he go to trial without it; he saw it was not in court, and he should have asked leave to amend, if he deemed it necessary to his defence; or he could have obtained leave to amend, when he discovered the necessity for it at the trial; but he would not, and preferred his exception. It will be observed by the court, that it never was designed, that both plots should be used at the trial; the one plot embracing the locations of both sides was intended as a substitute for the two previous plots. Is it not certain, that a location and counter-location, could not be compared so as to ascertain which was the correct location when they were on separate papers? and if so, then it was the neglect or laches of the defendant to go to trial, in that state of things, and if he suffers, it is from his own neglect. *Leges vigilantibus non dormientibus subveni unt*—and even if the appellant could invoke the aid of the plot referred to, it is contended that he has not there made such an explanation and location of the tract of land called *Marsham's Rest*, as would have entitled him to use it at the trial; and I would ask how he could shew, that if it was a different location of the land from that made by the plaintiff, unless they were put together on the same paper; that the locations could not be used in court so as to answer the ends for which they were intended, unless they were all placed together on the same paper, was ruled by the court, and admitted by the counsel on both sides; then, necessari-

ly, before the defendant below could avail himself of his locations on the plot, containing the explanation, he must have had leave to amend, to place that location and explanation correctly before the court; but the defendant declined to avail himself of that means to get the benefit of the counterlocation, and elected to take his exception. If the mistake was in the surveyor, and it operated against the defendant below, the Court would certainly have admitted an amendment, in the least inconvenient manner to him; and that he should have taken that course, there remains no doubt. It is denied that the locations returned on separate papers, were ordered to be transcribed, merely for the convenience of the jury; it was *indispensably necessary* to enable the Court and jury correctly to understand them, and thereby to test their relative correctness; and although the plots in the case are considered the pleadings; in this case, the separation of the plaintiffs and defendant's locations and putting them on different papers, was adjudged by the Court and admitted on all hands, to be a gross error; and that in that state, they would not answer the objects for which they were intended. They were therefore condemned—and I would assimilate them in that state to a plea that had been adjudged bad on demurrer, and leave had been granted to amend; in that case the plea thus condemned, although it remains in the case, cannot be considered at the subsequent trial of the case. The plot referred to was not amongst the papers in Court, when the case was taken up for trial; and I suppose that was known to the defendant; the surveyor produced it when called on at the trial, and if any material allegation was omitted in the substituted plots, it was his duty to have known it, and to have had it corrected before the jury was sworn; after, it was too late, except by withdrawing a juror.

Upon the second bill of exceptions it is contended, that the Court did not err in refusing to give the effect and operation asked for, to the deed from *Thomas Gantt* to *Patrick Sim*, offered in evidence in the Court below, by

the defendant, for the following reasons: first, the said deed has not been recorded amongst the land records of *Prince George's* county, or in any other place, as required by law, to give effect to it. In the second place, the said deed has not been located on the plots, as part of *Quicksale;* nor is there any location of the whole tract of land called *Quicksale;* certain lines are marked out on the plot shaded green, but the surveyor gives no explanation by which we are informed what location it is; and it is the only evidence, that can show to the Court and jury legally, what land the lines are intended to embrace. If the Court should determine, that with the explanation filed in the Court, the locations of the defendant can be considered as a part of the pleadings in the case at the trial, then the tract of land called *Quicksale,* has been located, but not otherwise, and on that there is no location of the deed from *Thomas Gantt* of part of *Quicksale;* it is also stated in the second bill of exceptions that the said deed of *Thomas Gantt,* is offered to prove that said *Gantt* had a title to part of the tract of land called *Quicksale* and part of *Marsham's Rest;* I suppose, because by the lines and courses of said deed, part of each of said tracts is claimed to be embraced within it; it is contended that no such proof would be made by said deed, even if it had been regularly *acknowledged* and *recorded;* (neither of which requisites has the said deed; and the want of either, would, it is contended, render it a nullity.) It is also contended as it purports to convey only a part of *Quicksale;* and as the evidence, relied on, to shew that *Thomas Gantt* was entitled to a part of *Marsham's Rest,* at the date of said deed, is insufficient; that it cannot be used to shew a title in the defendant below, in any part of *Marsham's Rest*—that being an elder tract than *Quicksale.* The point reserved in the third bill of exceptions, I presume is abandoned by the appellant, as he makes no argument against its correctness; nor is it believed he could, with any probable success, as the plaintiff below has not only charged the breach of his close in the declaration, but

has marked on the plot the trespass, by taking away his fence-logs, and proved it to the jury—for this evidence, I refer the Court to the last explanation and location made by the plaintiff below.

MARTIN, J. delivered the opinion of the Court.

An action of trespass for breaking, and entering the close of the plaintiffs, and cutting down their trees, produced the appeal, that now becomes a subject of examination in this Court. A warrant of resurvey was issued to the surveyor to locate such lands, as the parties deemed necessary, to explain their respective titles. Locations were made for both the plaintiffs and the defendant. But instead of placing their locations on one paper to give a distinct view of the whole, the surveyor returned one plot with the locations made for the plaintiffs, and a separate plot containing those made for the defendant. Under leave to add, and amend, he was directed by the Court, to place the locations he had made for the defendant, on the plot returned for the plaintiffs. Under the impression that these directions had been complied with, the plot letter B, was filed in the cause, and the plot originally returned for the defendant, was retained by the surveyor. The plaintiffs having located a tract of land called *Marsham's Rest,* and the alleged trespasses to be within the lines of that land, as thus located, the defendant offered to shew a counter location, of that tract as made by him, on the amended plot, beginning at red A, running to near red D, and round to the beginning at red A, and to produce evidence of the correctness of that location, which was objected to by the plaintiffs. On reference to the amended plot we find four lines are drawn with yellow shading, beginning at red A, running to red D, and round to the beginning at red A. But whether these lines are to represent the location of any land, and if any what land, by whom it was made, or for what purpose it was done, does not appear either by the location itself or any explanation on the face of the plot, or filed with the plot;

nor does the certificate of the surveyor state he ever made such a location.   The defendant then attempted to aid the defect by giving in evidence to the jury the plot originally laid out for him, on which *Marsham's Rest* was located, and which had been retained by the surveyor, and by the parol testimony of the Clerk of the Court, and the surveyor, who stated in substance that the plots originally filed in the cause had been delivered to the surveyor, for the purpose of putting the locations made by the defendant, on the plot returned for the plaintiffs; that the surveyor under the impression that he had done so, returned the plot B, as the amended plot, which was filed in the cause, and the plot originally made out for the defendant was retained by him, which plot he produced in Court.   This testimony was rejected by the Court, and presents the question arising upon the first bill of exceptions.

On the plot marked B, we find a parallelogram included within four lines shaded with yellow, but as before stated no name is given to the land, intended to be represented by that figure.   It is not stated by whose direction it was made, nor for what purpose it was placed there, nor does the surveyor, in his certificate, say it was made by him. It is therefore a mere nullity.   An imaginary location from which neither plaintiffs nor defendant could derive any information or advantage.   Could the defendant clothe this nondescript with name, character, and legal effect, by the production of the other plot, and the parol evidence offered by him?

If testimony out of the plot and explanations filed with them, could be received, to give name, and character, to unintelligible locations, it would defeat the object for which plots have been received as part of the pleadings in the cause.   If you can resort to such evidence to explain one tract, you may resort to it, to explain all.   It would then only be necessary to place certain lines upon a piece of paper without name, without explanation, and without stating the purpose for which they were made, and file it

with the Clerk. What advantage would such an unmeaning paper be, to the parties? It would not enable them to ascertain the grounds upon which his opponent relied, nor to make counterlocations of the lands, if such counterlocations were deemed proper. The object and intention of introducing plots in the cause, is to give certainty to the claim and defence, and to apprise the parties, that the locations of other lands are to be used to illustrate, and support the location of those under which they claim title. It is to prevent surprise, and therefore it has been the uniform practice of Courts, to reject evidence as to any object, unless it is located on the plots. If a tract of land has been located by one party, and not counterlocated by the other, the location is admitted to be correct. 3 *Harr. and Johns.* 13. But how is it possible, for a party to know whether a counterlocation is called for, until he is apprised that a location of the land is made? In the cause now before the Court, the plaintiffs located the tract of land called *Marsham's Rest*, and upon an examination of the plot and explanations, seeing no counterlocation of that land, they had a right to conclude the location was admitted. Had the counterlocations been apparent by a proper explanation filed with the plot, they might have made further locations of that land to shew its true position and extent. But it is said this case stands upon different grounds. That the plot originally filed for the defendant, was still filed in the cause, and the plaintiffs might have resorted to it when they pleased. But what advantage or information could they derive from it? The locations on the two plots are entirely different, and no man, unless he possessed the spirit of divination, could know by an examination of these two plots, that the figure within the yellow shading, and *red* letters on the amended plot, was intended to represent *Marsham's Rest,* as located on the plot returned for the defendant. We therefore concur with the Court below in the opinion expressed in the first bill of exceptions.

Mundell *vs.* Hugh and Lloyd Perry.—1830.

In the progress of, the trial of this cause, the defendant offered in evidence to the jury, a deed from *Thomas Gantt* to *Patrick Sim*, (under whom he claimed title,) for part of a tract of land called *Quicksale*, and to prove that the said *Gantt* was at the time of the date of the deed, the owner, and holder of the tract called *Marsham's Rest*. The deed states that the part of *Quicksale*, sold by the grantor, was contained within certain metes and bounds, particularly specified in the deed. Upon a location of these lands it appeared a part of the land contained within the metes and bounds, mentioned in the deed for *Quicksale*, was included within the lines of the elder tract, called *Marsham's Rest*. The Court were of opinion, (as appears by the second bill of exceptions) that the deed purporting to convey part of *Quicksale by name*, could convey no land but *Quicksale*. In this opinion we think they were decidedly wrong. *Gantt*, being the proprietor of both *Marsham's Rest* and *Quicksale*, if he conveyed the younger tract by metes and bounds, all the lands contained within those metes and bounds, would pass to the grantee, although part of the elder tract was embraced within them. Many decisions of this Court might be produced, to sustain this doctrine, and whether it depends upon the principle of carrying the intention of the parties into effect, or that a deed shall be taken most favorably for the grantee, the law is now too well established to be questioned. *Hawkins vs. Hanson*, 1 *Harr. and M'Hen.* 523. *Hall vs. Gittings*, 2 *Harr. and Johns.* 119.

It may not be improper however to remark that this deed, as it appears in the record, was not legal evidence to be given to the jury. It was executed on the 5th of August, 1735, and does not appear to have been recorded, according to the provisions of the act of 1715. Whether the defendant might not have produced testimony to give it legal effect, had he not been stopped by the Court, is not necessary for us to decide.

The *third* exception appears to be abandoned by the appellant, but if relied on cannot avail him. We concur with the Court in this exception.

The appeal in this case was entered in the year 1823, and therefore is not affected by the act of 1825, *ch.* 117, and it is the duty of the Court to notice errors, apparent on the face of the record, or any legal objections to evidence set out in the record, although they were not brought into view in the Court below, nor formed any part of the bills of exceptions. *Speake vs. Sheppard,* 6 *Harr. and Johns.* 86. The declaration in this cause does not state the name of the land on which the trespasses are alleged to have been committed. That still remains in ————. The warrant of resurvey is open to the same objection. The surveyor is directed to lay down all that plantable land, called ————, and when we examine this *supposed* amended plot, we think we hazard nothing in saying, a more defective one never was presented in a Court of justice. Having placed the locations of several tracts of land upon the plot, an explanation is made to some of them, and to others no possible clue is given, by which you can ascertain either the name of the land located, the party by whom, nor the object for which it was located. Some of the locations appear to be merely imaginary lines, drawn without any authority, and without any meaning. Nor is it in a better situation when we look at the certificate of the person who returned this *amended* plot. It professes to have been made by virtue of a warrant of resurvey to lay down all that plantable land called ————, without naming it. Nor can this blank be supplied, by either the warrant of survey, or the declaration filed in the cause. The same ———— is to be found in all. The certificate to the plaintiff's location then states, "I hereby certify, as surveyor of the county aforesaid, that I have in the presence of the sheriff of said county, carefully resurveyed, and laid down the tracts of parcels of land above explained, &c." To this certificate two seals are annexed, but neither

the name of the sheriff nor surveyor appears to the certificate. The certificate to the locations, made by the *directions* of the defendant, is still more defective. That does not state by whom the survey was made, or that it was made in the presence of the sheriff. It is subject to the same objections as to *blanks* with the certificate to the locations made for the plaintiffs. It is not signed by either the sheriff or the surveyor. This Court cannot affirm a judgment so fatally defective on the face of the proceedings.

**JUDGMENT REVERSED, AND PROCEDENDO AWARDED.**