STODDERT's Lessee *vs.* MANNING.—June, 1828.

It is the modern practice in location causes to offer in evidence all the plots and explanations returned under the warrant of resurvey, which is an excellent course, well calculated to lay the whole subject before the court and jury.

A letter of a deceased surveyor, with his plot and explanations, of the lands in dispute, made up chiefly of his statements and opinions, which did not give his declarations of former runnings of the lands, which he performed as surveyor, or to which he was in any way a witness, nor describe with sufficient precision to be understood, the place and extent of the lines of the tracts therein referred to, and in the survey of which he acted as an assistant, are not competent evidence to go to the jury.

Where the record of a commission to take depositions, &c. was not produced, nor did it appear by what authority, nor under what law it was issued, nor in what manner, or under what notice it was executed, copies of depositions obtained from the court of chancery, which purported to have been taken in obedience to a commission issued by that court in the year 1713, for the swearing and examining of evidences relating to the boundaries of a tract of land, called by the same name with that for which an action of ejectment was brought, are not competent evidence; although the register of that court informed the lessor of the plaintiff, that the report of the commissioners containing the depositions aforesaid, was the only paper relating thereto that he could find in his office, upon diligent search.

A witness cannot excuse himself from giving testimony, on the ground that he is called to swear against his interest.

In an action of ejectment where defence is taken on warrant and plots are returned, an objection to the competency of a witness on the score of in-

terest, cannot prevail, where the interest of the witness is not located on the plots; and his own private plot, made to demonstrate his interest, cannot be received in evidence for that purpose.

A witness who declined to give evidence of a particular boundary, although in the execution of the warrant of resurvey, he was at the place where it stood, and was called upon by the plaintiff to testify in relation to it, may yet at the trial be called on to testify thereto, though not sworn on the survey.

A witness who was not on the resurvey, and did not show to the surveyor a certain division line, is not competent to give evidence, in reference to such line, to the jury.

APPEAL from *Charles* County Court. This was an action of ejectment for the recovery of two tracts of land called *Rotterdam* and *William and James.* The defendant, (the appellee,) took defence on warrant, and plots were returned.

1. At the trial the plaintiff, (the appellant,) produced *William Wheeler Lewis,* who gave in evidence, that about thirty-five years ago there were some peach trees at the place marked on the plot ⊙. The plaintiff then produced the following letter, plot and explanations, which he proved to be in the hand-writing of *Theophilus Hanson,* who is now dead, to wit: "Thursday, June the 1st, 1797. D. Sir, I received yours, left at my house yesterday, requesting my advice and opinion respecting the first and second lines of the tract of land called *William and James,* on which your land in the neck in some degree depends. As to my advice and opinion, I think of little consequence. I shall, therefore, lay all the circumstances before you on which my opinion is founded. The *William and James* is a resurvey on a tract of land called *Rotterdam,* about the year 1728. The certificate says, (after running a number of courses,) to an ancient bounded white oak standing on an ivy point by *Nanjemoy* creek side, opposite to the dwelling house of Mr. *William Stone,* at which place, (according to the depositions of *Nicholas Cooper* and *Robert Taylor,* formerly taken,) stood the second bound tree of *Rotterdam,* from thence running into the woods east *according to the original line of Rotterdam,* for the length of 500 perches, then S W by W 270 perches, to a locust post now put up in the line of the said tract called *Nanjemoy* or *Indian Town,* then, &c. About thirty years ago Mr. *Hutchison* and Mr. *Stoddert* run this

land, or part of it, in order to make a division, (as you will see by the enclosed paper,) but for some reason, and probably because, (what you call the first line of *William and James* did not take in their possessions,) did not complete the division. In the year 1764, *Wheton Wallace* made a resurvey, and took up the land left out by the then running the east line of *William and James* as far as the head of *Goose creek*, or nearly as far. This appears to have been done a very little after the survey made by *Hutchison* and *Stoddert*. Some time after this survey, Mr. *Henry Brent* took up the balance of the land left out by the first line of *William and James*. About 10 or 12 years ago, Mr. *Hutchison* called on me to survey *William and James*, at which time the appearances were as represented in the enclosed paper. There were then three or four witnesses; *Charles Timms* was one, the rest I do not remember; they all agreed in the same representation; they had all lived long in the neck, and appeared to be well acquainted with the circumstances. I made the survey for *Wheton Wallace*, as assistant under my father, and well remember running the first line of *William and James* a considerable distance into the possessions and cultivations of the tenants on the *William and James*. From these circumstances it is my opinion, that the east line of the *William and James*, from the second boundary of *Rotterdam*, ought to be run so as to include the possessions as shown, and that it would be so supposed, provided that no transactions of the proprietors of the *William and James* would operate against them. There is no possession that will operate in this case I believe; and although the correction, agreeably to the age of the *William and James*, would not include the former possessions; yet as its my opinion, according to the original line of *Rotterdam*, it would be corrected agreeably to the age of *Rotterdam*, so as to include the former possessions, and that the second line would run from the end of the first line as aforesaid to a free stone, a boundary of *St. Thomas's Manor*, which is also a boundary of *William and James*. And if the transactions of the proprietors of the *William and James* should prevent them from their claim on the first line, I do not think it would prevent yours on the second. I would advise you to get more able opinions than mine before

you do any thing on the land which might involve you in a suit, in which you might possibly suffer. I am dr. sir, with sincere respect and esteem yours, &c.

*Theo. Hanson.*

N. B. *Nanjemoy,* or *Indian Town,* is a tract of land (I believe,) resurveyed with *Rotterdam* into *William and James.*"

[Then follows the plot, with the explanations thereof.]

The plaintiff then prayed the opinion of the court, and their direction to the jury, that the same was competent testimony of the facts therein stated. But the Court, [*Key,* and *Plater,* A. J.] refused to admit the said letter, and plot and explanations, in evidence to the jury. The plaintiff excepted.

2. The plaintiff then produced *Thomas Burgess,* who was sworn in chief, and then refused to give testimony, and prayed the protection of the court, alleging that he was interested, and produced to the court a plot made for his private use, to show his interest; the court then called on *James Brawner,* who swore that the beginning of *Bye Fields Close,* was the same as the boundary at *B,* on the plots and explanations filed in this cause. But the said plot, produced by the witness of *Bye Fields Close,* was not located on the plots filed in this cause; which said tract called *Bye Fields Close* is the land of the witness, *Thomas Burgess.* Whereupon the court was of opinion, that the said *Thomas Burgess* was interested, and incompetent to give evidence to the place *B,* marked on the plots filed in this cause. The plaintiff excepted.

3. The plaintiff then offered *Thomas Burgess,* who had been offered as a witness on the survey at a place marked on the plot *B,* who was sworn in chief, but objected to giving testimony, alleging that he was interested in the location. The witness then produced a plot made out by the surveyor for his private use, and the surveyor gave testimony that the beginning of *Bye Fields Close* was at the same place as the second boundary of *Rotterdam* marked *B,* as on the plots filed in this cause, which said plot, thus given to the court by the witness, and which plot and lines were not located on the plots filed in this cause, is as follows: [Here follows the said plot.]

The witness then produced a patent for *Bye Fields Close*, granted to *Jeremiah Dickeson*, on the 26th of May 1663, lying on the east side of *Avon* river, in *Charles* county, adjoining to land formerly surveyed for *Simon Oversee*, called *Rotterdam*, &c. and gave in evidence that a part of the land included in the line of *Rotterdam*, as located on the plots filed in this cause by the plaintiff, was in possession of the witness. The plaintiff then asked the said *Thomas Burgess* to state what he knew of the tree marked letter *B* on the plots filed; and whether it was or was not the second boundary of *Rotterdam;* and further asked him to point out the beginning of *Bye Fields Close*. And then prayed the court to instruct the witness to answer the question, *first* as to the place marked *B;* and *secondly*, as to the beginning of *Bye Fields Close*. The witness replying that he was interested, and therefore objected. Which prayer the court refused in toto, and were of opinion that the witness was interested and incompetent. The plaintiff excepted.

4. The defendant then produced *Giles G. Craycroft*, a competent witness, who gave in evidence that a certain *Samuel Chandler*, in the year 1807, who is since dead, told the witness, that sometime before, the proprietors of the plaintiff's land, and the proprietors of *Wallace's* land, had agreed upon a division line, and that he *Samuel Chandler* had been present at a survey made by said parties, and that they run the line, and blazed the trees marked on the plot *i* to *k*, and that the fence marked on the plot was put on the line; that the said parties agreed to meet again, and enter into writings or bonds, yet did not meet. To which testimony the plaintiff objected; but the court overruled the objection, and suffered the evidence to go to the jury. The plaintiff excepted.

5. The plaintiff then read in evidence the patent of the tract of land called *Rotterdam*, granted to *Simon Oversee*, on the 11th of March 1658, "lying on the north side of *Potomack* river, and on the eastern branch of a creek in the said river formerly called *Nanjemoy Creek*, but now *Avon river*. Beginning," &c. The certificate of said land is admitted to bear date the 7th of July 1651. The plaintiff then read to the jury

the patent of *Rotterdam*, granted to *Robert Doyne*, dated the 9th of June 1676, reciting "whereas it appeareth by a certain inquisition indented, bearing date the thirteenth day of December, in the fortieth year of the dominion of *Cœcelius*, late absolute Lord and Proprietary of the provinces of *Maryland* and Avalon, Lord Barron of *Baltimore*, taken by *Henry Adams* and *Thomas Mathews*, Gentl. by virtue of a writ of *mandamus*, issued out of our court of chancery, it was found that *Symon Oversee* of *Charles* county, in our said province of *Maryland*, deceased, at the time of his decease, was seized in his demesne as of fee, and died possessed of five hundred and fifty acres of land called *Rotterdam*, lying on the east side of the eastermost branch of *Nanjemoy Creek*; and by the same inquisition it appeareth that the said *Symon Oversee* died intestate, and without heir; whereupon it was the judgment of our justices of our provincial court, the eighth day of this instant, month of June, that the said 550 acres of land late in the tenure of the said *Symon Oversee*, is escheated unto us for want of heir.   Now know ye, that we, for and in consideration of twenty thousand pounds of tobacco, to us secured to be paid by *Robert Doyne*, of *Charles* county aforesaid, gentl. we do hereby grant unto him the said *Robert Doyne* all that parcel of land called *Rotterdam*, lying on the north side of *Potomack river*, and on the eastern branch of a creek in the said river formerly called *Nanjemoy Creek* but now *Avon river*, beginning," &c.   The plaintiff further read in evidence the patent of a tract of land called *William and James*, granted to *William Hutchinson* and *John Stoddert* on the 27th of May 1736, in virtue of a special warrant to resurvey two tracts or parcels of land, the one called *Nanjemoy Indian-Town*, and the other called *Rotterdam*—five-sixth parts whereof were granted to the said *Hutchinson*, and one-sixth part to the said *Stoddert*, *&c.* The plaintiff then offered in evidence the following affidavit of *John T. Stoddert*, the lessor of the plaintiff, viz. "*John T. Stoddert* makes oath, that in the month of September, in the year 1819, he called upon *Thomas H. Bowie*, Esquire, then register in chancery, to make search in his office for a commission issued out of the high court of chancery, directed to a certain *Anthony Neale* and *William Chandler*, bearing date the 15th

of March 1713, for the swearing and examining evidences re-
lating to the bounds of a tract of land lying in *Charles* county,
called *Rotterdam,* belonging to the orphans of *William Hutch-
ison,* and for the report of said commissioners.   Such search
was made by the said register as this deponent believes; and a
copy of the report of the commissioners containing two depo-
sitions, to wit, one of *Nicholas Cooper,* and another of one
*Robert Taylor,* to the second boundary of *Rotterdam,* was
furnished; and the deponent was informed by the said register,
that it was the only paper relating to this business that he could
find in his office upon diligent search.'' Sworn to the 28th of
March 1822.   The plaintiff then offered to read in evidence
the following paper, being copies of the depositions referred to
in the above affidavit, and obtained from the court of chancery,
to wit: *"Maryland,* set.   In obedience to a commission out of
the high court of chancery directed to us, *Antho. Neale* and
*Wm. Chandler,* the subscribers hereof, bearing date the fifth
day of March anno 1713, for the swearing and examining evi-
dences relating to the bounds of a tract of land lying in *Charles*
county, called *Rotterdam,* belonging to the orphans of *Wm.*
*Hutchison,* we have taken these following depositions, hereun-
der transcribed, being from such persons as was offered unto us
by Mr. *James Stoddert,* guardian to the orphans, viz. *Nicho-
las Cooper,* aged seventy years or thereabout, being by us duly
sworn upon the Holy Evangely, and examined, saith,'' &c.
[The matters sworn to related to the boundaries and lines of
the tracts of land in controversy, but the county court having
refused to permit the depositions to be read to the jury, and
the appellate court having sustained that opinion upon grounds
distinct from facts contained in them, they are omitted.] "Cer-
tified under our hands and seals this thirteenth day of January
anno 1714.   A true copy of the original sent to ye chancery by
us.

*Antho. Neale,*
*Will. Chandler.''*

The plaintiff then prayed the court to admit the said affidavit
to be read, and to admit the said depositions in evidence.
Which the court refused.   The plaintiff excepted.

6. The plaintiff then, in proof of his locations of *Rotterdam* and *William and James*, read in evidence the patent of a tract of land called *Rotterdam*, granted to *Simon Oversee;* also the patent of a tract of land called *Rotterdam*, granted to *Robert Doyne*; and also the patent of a tract of land called *William and James*, granted to *William Hutchison* and *John Stoddert*—all of which said patents are hereinbefore more particularly referred to. The plaintiff then gave in evidence by a certain *Giles G. Craycroft*, that he lived on the plaintiff, *(Stoddert's,)* land, in the year 1807, or 8, and that he asked *S. Chandler* if he knew how the fencing, located on the plot from red *C* to little red *c* was to be kept up, and that then they were near the said fence, and who informed him that the fence was put there by agreement between *Hutchison*, and *Stoddert* and *Wallace*, who are the same persons who held *Rotterdam* and the *William and James*, and that from the head of the marsh the line run to a box oak, standing on a point of the bank near which there are ivys and near the new discovered spring; and that he went this morning with the surveyor, and pointed out the tree which he supposes to be the tree alluded to by the said *Chandler*, and that there is no other box oak standing on the said point, or near it. The plaintiff further gave evidence, that the said *Chandler* is dead; and also gave in evidence by the surveyor, that the tree shown by the witness, *Craycroft*, is the tree marked on the plot by letter B. The witness further stated, that *Saml. Chandler* said that he had understood from old people that the tree formerly stood under the bank, and was a white oak, but that he, *Chandler*, never knew any other boundary but the box oak, and that he had frequently seen it run from, and not from any other; and he further told the witness, that it was a boundary of the *Indian-Town Land*, which name was the common name of the lands held by *Hutchison* and *Stoddert*. And further gave in evidence by *Bennet B. Semmes*, that he has known the lands held by *Hutchison* and *Stoddert* for 38 years, and that the lands went by the common name of the *Indian-Town Tract*. This witness did not know any thing about *Rotterdam*, except what he has seen and heard upon the location made in this cause. The plaintiff further gave in evidence by *William W. Lewis*, that at the place

marked on the plot by black *B*, there stands a box oak, the same that stood there thirty-five years ago; that it has not grown much; that it stands on a point near a spring called *The New Discovery Spring*, about 20 steps from the creek, and is surrounded along the bank with ivys, and that there is no other point like it any where near it. The plaintiff further gave in evidence by *James Brawner*, a competent witness, that at the place marked on the plot by black *B*, there has stood from the time he first knew it, and still stands, a box oak upon an ivy point near *Nanjemoy Creek*; that there were three trees there standing when he first knew it, one a red oak, one a hickory, and the other the said box oak; that there is no other point on the creek near this place answering this description. And further gave in evidence, that the tree is marked with blaze, which appears to have been done from 15 to 20 years ago, and that the said tree is a flourishing, thriving tree. The defendant then prayed the court to instruct the jury, that the plaintiff was not entitled to recover. Which opinion and direction the court refused to give. The defendant excepted. The verdict of the jury, and judgment thereon by the court, was for the defendant, and the plaintiff appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, ARCHER, and DORSEY, J.

*Magruder*, for the Appellant, contended, that the judgment of the court below ought to be reversed—1. Because the court erred in refusing in the *first* bill of exceptions, to admit in evidence to the jury the letter, plot and explanations, proved to be in the handwriting of *Theophilus Hanson*, who was dead.

2. Because the court erred in the *second* bill of exceptions, in declaring that *Thomas Burgess* was incompetent to give evidence to the place *B*, on the plots.

3. Also in the opinion expressed in the *third* bill of exceptions, in refusing in toto the prayer of the plaintiff, and especially in deciding that *Burgess*, the witness, was incompetent to prove the beginning of *Bye Fields Close*.

4. In the *fourth* bill of exceptions, the opinion of the court is incorrect, forasmuch as it was not competent for the defendant to prove by the witness, *Craycroft*, the matters set forth

in said exception, and derived by the witness from *Chandler.* 1st. Because the said testimony is liable to any objection which may be urged against the plots, &c. in the *first* bill of exceptions; and 2d. Because it is hearsay evidence of an agreement as to a division line, which was never consummated.

5. Because the paper offered by the plaintiff in the *fifth* bill of exceptions ought to have been permitted to go in evidence to the jury.

On the *first point,* he referred to *Snavely v MᶜPherson &· Brien,* 5 *Harr. &· Johns.* 154.

On the *second* and *third points,* he referred to *Peake's Evid.* 192. *The City Bank of Baltimore v Bateman,* 7 *Harr. &· Johns.* 104.

No Counsel argued for the Appellee.

EARLE, J. delivered the opinion of the Court. The appeal is taken in this case in an action of ejectment, instituted in *Charles* county court, for the recovery of two tracts of land, called *Rotterdam* and *William and James.* The defendant took defence on warrant, and plots and explanations were returned in the cause. In the progress of the trial, *five* bills of exceptions were signed by the court, at the instance of the appellant, which it has now become our duty to revise and decide upon.

It is the modern practice, in location causes, to offer in evidence all the plots and explanations returned under the warrant of resurvey. This we commend as an excellent course, well calculated to lay the whole subject litigated, explicitly before the court and jury. It has not been pursued in the case under consideration; but the plots and explanations are, nevertheless, adverted to in the proceedings, and are sufficiently before us, to claim our attention in disposing of the points we have to act upon.

We concur with the court below, in their opinions delivered in the *first* and *last* (the *fifth*) bills of exceptions; but we must beg leave to dissent from those expressed by them, in the remaining bills of exceptions. In the *first* bill of exceptions the court were right in rejecting the letter, plot and explanations, of the deceased surveyor, *Theophilus Hanson,* and in not permitting

them to be laid before the jury. They contain no legally cor-
rect information, and are made up mostly of statements and
opinions. Unlike the case of *Snavely v M'Pherson & Brien*,
5 *Harr. & Johns.* 150, they do not give his declarations of
former runnings, which he performed as a surveyor, or to which
he was in any way a witness. He speaks, it is true, of a sur-
vey made between the years 1760 and 1776, when he acted as
an assistant to his father, in locating a vacancy taken up by
*Wheton Wallace*, yet he does not designate it on his plot with
sufficient precision to be understood, or to ascertain the place
where the line of *William and James* sometimes called its
first line, formerly run. He well remembers that it run a con-
siderable distance into the possessions and cultivations of the
tenants on the *William and James*; but the exact distance it
run is undetermined, and the possessions and cultivations are
not delineated on his plot. The old *Peach Orchard* he has
mentioned, is not located by the plaintiff on the plots in this
cause, and we cannot readily perceive how it would be possible
to give it an exact designation, on any particular part of them,
from the very uncertain information derived from *Theophilus
Hanson*.

It is to be collected from the depositions offered in evidence
in the *fifth* bill of exceptions, that they were taken under a
commission issued from the high court of chancery in the year
1713. But the record of the commission is not produced,
neither does it appear by what authority, or under what law, it
was issued; nor in what manner, or on what notice it was exe-
cuted. If authorised, it seems to have been altogether an in-
complete and imperfect proceeding, and the court could not
have erred, we think, in refusing it admission to the jury.

In the *second* and *third* bills of exceptions, the court re-
fused to the plaintiff the benefit of *Thomas Burgess's* testi-
mony, on the score of incompetency, on account of his sup-
posed interest in the event of the suit. In this we clearly think
their honours were wrong. The objection to testify was made
by the witness himself, but if it had come from a different quar-
ter, it could not have been available. If *Thomas Burgess* had
an interest, it is not located on the plots in the cause, and his
own private plot made to demonstrate it, could not be received

for that purpose.    He was moreover called to swear against his interest, and it is not for a witness to excuse himself from giving evidence on this ground.    Since the case of *Taney v Kemp*, decided in this court in the year 1818, 4 *Harr. & Johns.* 348, it may be laid down as a rule of evidence, that no person shall be exempted from giving testimony on the ground that his answer may affect his interest.    What the particular situation of *Thomas Burgess* is, in respect to the lines of *Rotterdam*, or *William and James*, does not fully appear.    But whether the establishment of the boundary at *B*, deprives him of a part of his land, within the lines of his tract called *Bye Fields Close*, or subjects him to the plaintiff's action, for a trespass on *Rotterdam*, or *William and James*, he is equally within the operation of the rule, and in neither case is entitled to exemption from giving evidence in this cause.

There is another difficulty arising out of the consideration of the *second* and *third* bills of exceptions, which we deem it proper to notice.    *Thomas Burgess* declined to give evidence of the boundary at *B*, although, in the execution of the warrant of resurvey, he was at the place where it stands, and was called upon by the plaintiff to testify in relation to it.    Ought he to have been rejected as a witness on the trial for this cause?    The usual course is to examine a witness on the survey, and to take his deposition *de bene esse;* and it is not the least among many advantages attending this practice, that the testimony of the same witness in court, is applied more readily to designate points on the plots, and is, therefore, more perfectly understood by the court and jury.    This advantage is attained in this case. By *Thomas Burgess* being on the ground, at the time of the survey, at the boundary *B*, where he was called upon to give evidence, no mistake can arise as to the place at which he was required to prove the boundary, and his testimony on the trial can be as well understood, as if it was a repetition of what he had previously sworn in the country.    Nor can we perceive that the offer to swear him, could produce any surprize on the opposite party, as the intention to make him a witness to a particular and designated boundary, was explicitly avowed on the execution of the warrant.    For these reasons we are of opinion, that his testimony on the trial ought not to have been

rejected on the ground that he was not a sworn witness on the resurvey.

The court below certainly erred in admitting to the jury, the evidence mentioned in the *fourth* bill of exceptions. *Giles G. Craycroft* was not on the survey, and did not show to the surveyor the division line, designated by the letters *i. k.* on the plots, and his testimony in reference to it ought not to have been laid before the jury.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.