JAMES J. MORRISON AND GEORGE KILDOW *vs.* THOMAS HAMMOND'S Lessee.

*Prayers and Instructions to the jury—Appeal—Adverse Possession—Ejectment—Evidence—Examination of Witnesses.*

The Act of 1862, ch. 154, applies as well to an instruction which assumes several facts, as to one in which only one fact is assumed. If there be proof to sustain the facts competent to go to the jury, and the Court below in its instruction assumes them, instead of submitting them to the jury, the objection under the Act of 1862, must be taken at the trial, otherwise it cannot be insisted on in the appellate Court, as cause for reversal.

Twenty years continuous, exclusive, adverse possession by actual inclosure, by the defendants or one of them and those under whom they claim, will bar an action for the recovery of the land so held.

To constitute a title by adverse possession, actual inclosure is necessary, yet where the fences have been partially removed at different periods, to enable the occupant and others, by his permission, to pass through; or the fences have been partially destroyed at intervals during the winter and renewed in the spring, for the purpose of cultivating the lands; although the inclosure in that way might cease to be continuous in one sense, such temporary breaches would not be sufficient to defeat a claim by adverse possession.

The Act of 1852, ch. 177, sec. 7, merely dispenses with the necessity of having a witness sworn on the survey, in order to make him competent to testify at the trial; but does not render a witness competent to give evidence at the trial with regard to the location of any object upon the plat, who was not upon the survey at all.

APPEAL from the Circuit Court for Allegany County.

This is an action of *Ejectment* brought by the appellee to recover Military Lot, No. 3,905, in Allegany county, and was tried before REVERDY JOHNSON, Jr., as Special Judge.

The facts are sufficiently stated in the opinion of this Court.

The plaintiff, at the trial, offered the following prayers :

1. If the jury shall believe from the evidence in the

cause, that the plaintiff has correctly located Lot No. 3,905 on the plots, then the plaintiff is entitled to recover whatever portion of the lands claimed by the defendants, that the jury shall believe has not been held by the defendants, or one of them, and those under whom he or they claim, for twenty consecutive years before the bringing of this suit, by a real and substantial enclosure ; which was during said period an exclusive, continuous and adverse possession by enclosure.

2. That under the pleadings and evidence in the cause, the plaintiff's right to recover for either of the possessions located by the defendants, if they believe that Lot No. 3,905 is hereby located on the plots, can only be barred by an exclusive, adverse and continuous possession by enclosure, for a period of twenty years, of either Possession No. 1 or Possession No. 2, prior to the bringing of this suit, and that the plaintiff is entitled to recover both, or either of said Possessions, unless they shall find that the defendants and those under whom they, or either of them claim, have been in possession of either or both of said Possessions by such adverse, continuous and exclusive possession by enclosure, for a period of twenty years prior to bringing this suit, and that the enclosure must be a real, substantial, and continuous enclosure.

The defendants prayed the Court to instruct the jury as follows :

1. That if they shall find from the evidence in the cause, that a patent was granted by the State of Maryland to Thomas Johnson on the 31st of March, in the year 1814, for Lot 3,905, and that the premises in controversy are correctly located, as shown by the plots in this cause, and that James Morrison, the grandfather of one of the defendants, was in adverse possession of said premises shortly after the issuing of said patent, occupying, cultivating and using them as his own, and claiming

title to them, and that he had them enclosed by fences, and that he continued so to use, occupy, enjoy and possess them until the time of his death, and that the will of James Morrison, now offered in evidence, was duly executed by said James Morrison, that the wife of said James Morrison was in possession of said premises at the time of his death, and that she continued to use, occupy and possess said premises in the same manner that her husband had done, during his life, and to keep them enclosed in the same manner, and that the said wife of James Morrison died about the year 1836; and if they shall further believe that John Morrison, the son of said James, died before his mother, leaving the defendants, James Morrison and John J. Morrison, his only children, and that they were then infants, and that Theodosia Morrison was the guardian of said infants, and as such guardian she had possession of said premises until her removal from the said guardianship, and as such guardian, used, occupied and enjoyed the said premises in the same manner while she was such guardian, and kept them enclosed as aforesaid ; and that Robert Ross was, on such removal, appointed guardian of said infants instead of Theodosia, and that said Ross, as such guardian, was in possession of said premises, and used, occupied, cultivated and kept them enclosed as aforesaid, until the said infants became able to attend to their own estate, and that said defendants, James Morrison and John J. Morrison, then took possession of said premises, and used, occupied, cultivated and kept them enclosed in the same manner until the year 1852, and that John J. Morrison, about the year 1865, made the will now in evidence, and that the same was regularly executed, and that the parties so in possession claimed the said premises all the time as their own property, then it is the duty of the jury to presume a deed from said Thomas Johnson, for the said premises now in controversy, to the said

James Morrison, the grandfather of the present defendants.

2. And further, that if they find the facts stated in the first prayer, except as to the length of time of possession, and that the said James Morrison, the grandfather, and those claiming under him, or either or any of them, was in adverse and uninterrupted possession of said premises, with claim of title for the period of twenty years previous to the bringing of this suit, with actual enclosure, then the plaintiff cannot recover on the pleadings and evidence in this cause.

3. That if they find the facts stated in the first prayer, and that the enclosures and adverse possession were continuous for twenty years before suit brought, except when they were opened by said James Morrison or those claiming under him, or their tenants while in possession, temporarily to haul through for the usual and proper enjoyment of said Possessions, then such temporary opening in the enclosures do not destroy the continuity of said possession.

4. That if they find from the evidence in the cause that any of the witnesses of the plaintiff were not present on the ground at the making of the survey returned in this cause, that then the testimony of such witnesses is not competent to prove any objects, whether road, fences or buildings, connected with said survey, or intended for illustration thereof, and must not be considered as evidence for that purpose in this cause.

5. And that there is no sufficient evidence before them to show that any road passed through Possession No. 1, as located on the plots, if they shall find that said road, as located, was not located by measurements, and was not pointed out to the surveyor until some days after the survey was made, and when the defendants were not present.

The Court granted the prayers of the plaintiff and

rejected those of the defendants; to this ruling the defendants excepted, and the verdict and judgment being against them as to Possession No. 1, they appealed.

The cause was argued before Bowie, C. J., Bartol, Weisel and Crain, J.

*J. H. Gordon,* for the appellants.

The granting of the plaintiff's first prayer was erroneous, first, because the only fact upon which the plaintiff's title is based, is the correct location of lot No. 3,905. It does not submit to the jury to find whether or not the patent was granted for the lot; whether the will of Thomas Johnson was executed and conveys it; whether the chancery proceedings in Frederick were had; whether the deed of Graham, or the deed of Ross, were executed. Secondly, because it assumes as a legal principle, that the possession to bar the right of action, must have been by the defendants, or one of them, and those under whom they claim. When the law, as settled by this Court, shows that a possession of twenty years by James Morrison, the grandfather, or by him and those claiming under his will, would have created an outstanding title which would have barred the action just as effectually. *Armstrong vs. Risteau's Lessee,* 5 *Md. Rep.,* 256; *Morgan's Lessee vs. Slider,* 22 *Md. Rep.,* 269; *Casey's Lessee vs. Inloes et al.,* 1 *Gill,* 490; 2 *Smith's Lead. Cases,* 592; *Beall vs. Lynn,* 6 *H. & J.,* 336.

The second prayer of the plaintiff is defective for the same reasons. And for the additional reason that it instructs the jury that the defendants' possession must not only be continuous, *but that the inclosure must be continuous,* as well as the possession. This principle, if established, would reduce the whole doctrine of adversary possession to an absurdity, because it would destroy the utility of possession. Every time the occupant would open his gate,

his bars or his fence, to drive his stock in or out of the premises, or to drive his carriage or his wagon through the inclosure, to go to church with his family, or to mill or market with his produce, the continuity of his inclosure would be broken and his adversary possession gone. In this case the evidence shows that Morrison and his tenants were in the habit of driving through Possession No. 1, in the winter season, for the purpose of keeping the saw mill, which was on the premises, supplied with logs to be sawed there, and hauling away the lumber. Such a use of the premises did not entirely destroy the possession or its character; because they were in possession all the time, running the saw mill and using the premises, and only making such openings in the fence as were necessary for that purpose. And if the openings were greater than that, it was for the jury to find, and the mere want of continuity of inclosure did not destroy the adversary possession.

The defendants' first prayer should have been granted. It puts all the facts that are necessary to justify the presumption of a deed from Thomas Johnson, the patentee, to James Morrison, in whom the adversary title commenced, and he is presumed to have entered originally with title. *Beall vs. Lynn*, 6 *Har. & John.*, 360, 361, 363; 1 *Phil. on Ev.*, *Edwards' Edition*, 667; *Smith's Lessee vs. Steele*, 3 *Har. & McH.*, 103; *McHenry on Ejectment*, 177; *Helm's Lessee vs. Howard*, 2 *H. & McH.*, 77, 86; *Gibson vs. Martin*, 1 *H. & J.*, 545.

The evidence fully supports the theory of this prayer; Chisholm proves the correct location of Possessions 1 and 2. Other witnesses prove the possession with inclosures, and cultivation and claim of title. Wm. Shaw, on cross-examination, says, he knew old Mr. James Morrison in 1811 and 1812, Morrison cultivated No. 1 every year; left Westernport in 1813, went up the creek three or four miles, was gone three or four months; in 1814 returned

to Morrison's store and staid till 1816, then moved five miles away. No. 1 was used as most persons use their property, the fence was thrown down in winter and built up in spring. The possession therefore commenced in 1811, if not sooner, and continued till the suit was brought in 1858, forty-seven years, with inclosures and claim of title. This is sufficient to raise presumption of title. *Beall vs. Lynn,* 6 *Har. & John.,* 360, 361 *and* 363 ; *Davis vs. Davis,* 2 *Har. & John.,* 295 ; *Hall vs. Gittings' Lessee,* 2 *Har. & John.,* 380, *and* 2d *Bill of Ex.,* 390 ; *Carroll's Lessee vs. Norwood,* 4 *Har. & McH.,* 287 ; *Casey's Lessee vs. Inloes et al.,* 1 *Gill,* 430, 474, 475, 489, 490.

When the proper foundation is laid, the instruction is positive, the jury must presume the title. *Casey's Lessee vs. Inloes et al.,* 1 *Gill,* 490.

The second prayer should have been granted for the same reason as the first.

The third prayer is the converse of the proposition put by the plaintiff's second prayer, as to continuous inclosures, and should have been granted for the reason assigned for the rejection of the plaintiff's second in that respect.

The fourth and fifth prayers raised the same question made by the exceptions to evidence, and should have been granted.

Chisholm's testimony shows that Shaw was not present at the survey, and that Shaw pointed out to him the location of the road after his survey was made, and returned into Court, and when the defendants were not present, and that the road was located only as an approximation, and not by measurement. Hammill's testimony speaks of an opening in the fence, which is not located on the plats, and which witness did not point out on the ground. The object of location is to prevent surprise. *Mundell vs. Perry,* 2 *Gill & John.,* 193; *Medley vs. Williams,* 7 *Gill & John.,* 61, 68; *Hawkin's Lessee vs. Middleton and Beane,* 2 *Har. & McH.,* 119 ; *Carroll vs. Norwood,* 1 *Har. & John.,* 167,

*7th Ex., page* 177 ; *Nelm's Lessee vs. Smith,* 4 *Har. & Mc-Hen.,* 389 *and* 390.

This was the law prior to 1852. Does the Act of 1852, as found in the Code, allow this evidence to be given? The fifty-seventh section, page 529, of the Code of Pub. Gen. Laws, only provides " that witnesses may be examined who were not sworn on the survey, and witnesses may be shown to be interested without locating his interest on the plats," in the discretion of the Court ; but there is no provision that a witness shall be allowed to testify who was not on the survey, and did not point out the objects to be proved to the surveyor. *Clary vs. Kimmell,* 18 *Md. Rep.,* 246.

*Thomas J. McKaig* and *William J. Read,* for the appellee.

The defendants' first prayer is defective, because the enclosure is not stated to be continuous. *Armstrong vs. Risteau's Lessee,* 5 *Md. Rep.,* 256 ; *Casey's Lessee vs. Inloes et al.,* 1 *Gill,* 430 ; *Thistle et al. vs. The Frostburg Coal Co.,* 10 *Md. Rep.,* 129.

The second prayer is defective for the same reasons as the first, and because it was calculated to mislead the jury. *Anderson vs. Garrett et al.,* 9 *Gill,* 136; *Ridgely vs. Bond and Wife,* 17 *Md. Rep.,* 14.

The third prayer is defective, because there is no evidence in the case to support it, or upon which it can be predicated. *State use of Stevenson vs. Reigart,* 1 *Gill,* 1 ; *Pierce and Rowles vs. Negro John,* 6 *Md. Rep.,* 28 ; *Preston & Hepburn vs. Leighton, &c.,* 6 *Md. Rep.,* 88 ; *Gaither vs. Myrick,* 9 *Md. Rep.,* 118 ; *Williams, &c. vs. Woods, Bridges & Co.,* 16 *Md. Rep.,* 220 ; *Keech vs. Balt. & Wash. R. R. Co.,* 17 *Md. Rep.,* 32 ; *Hagan vs. Hendry,* 18 *Md. Rep.,* 177.

The fourth prayer is defective also for the following reasons :

Morrison and Kildow *vs.* Hammond's Lessee.

The Act of 1852, ch. 177, sec. 7, provides, that witnesses may be examined who *were not sworn on the survey.* The question is, can witnesses who were not on the survey at all, be examined as to objects located on the plats?

The case in 18 *Md. Rep.*, 247, decides, upon the construction of the Act of 1852, that all objects and title papers, &c., must be located upon the plats, or else no evidence can be given of them. The Court cites the case of Mundell *vs.* Perry, in its opinion, which shows, that the old practice and law was not in this particular changed by the Act of 1852. In order to find the proper construction of the Act, upon the above question, we must see what the law was prior to its passage. In the case of *Bowley's heirs vs. Deady's heirs, cited in Dorsey on Eject-ment*, 62, it was decided that a witness *not sworn on the survey*, was legally permitted to prove, that he was well acquainted with the streets, &c. What then was the object in passing this law, if it were not to allow persons *not present* at the survey, to testify? The legislature is presumed to know the existing law, and the Courts must construe it to be a change of the existing law, else the statute is a nullity.

The fifth prayer could not be granted because the Act of 1852, provides distinctly, that the locations may be made.

BARTOL, J., delivered the opinion of this Court.

This is an action of ejectment brought by the appellee to recover "*Military Lot No.* 3,905," in Allegany county. The defendants pleaded not guilty, and took defence on warrant, claiming title by adversary possession, to two portions of the Lot, described in the Surveyor's return and on the plats as "*Possessions No.* 1 *and No.* 2." They recovered for *Possession No.* 2, and the plaintiff, not having appealed, that is not now in controversy. For No. 1 the verdict and judgment were rendered for

the plaintiff. Three bills of exceptions were taken by the defendants; the first two, on the admissibility of evidence, and the third to the ruling of the Court below on the prayers; as the same questions raised by the first and second exceptions are also presented by the fourth and fifth prayers of the defendants, they will be considered in disposing of the third exception. To prove his title the plaintiff gave in evidence a patent to Thomas Johnson dated March 31st, 1814, conveying lot No. 3,905; and other evidence tracing the title from Thomas Johnson, the patentee, to the plaintiff, by mesne conveyances. No exception was taken to the admissibility of this evidence, and no question appears to have been distinctly raised below, as to the regularity of the plaintiff's paper title; the lines of "Possession No. 1," the land in controversy, are embraced in Lot No. 3,905, about the location of which there is no dispute. The defendants gave proof tending to show that James Morrison held possession of the land in controversy by inclosures, claiming title thereto for a number of years before his death, which took place in 1824 or 1825. The witness Duckworth remembers the possession of James Morrison as far back as 1808 or 1810. Other witnesses testified on the same subject, William Knight going back as far as 1817, and others to periods less remote. The defendants also gave in evidence the will of James Morrison, dated 20th May, 1823, and proved 12th January, 1825, by which he devised to his son John all the residue of his estate, real and personal, in terms which would pass any estate he might have had in this property. Evidence was also given tending to prove the possession by inclosures of John Morrison under the will, and of John J. and James J. Morrison, the sons of John, after his death, by their guardians, the defendant James J. Morrison, being one of the sons of John. There is some conflict of testimony with regard to the character of James Morrison's inclo-

sures, some of the witnesses testifying that they were not kept up, that much of the time the fences on one side were down, the land lying out as a common, and a road across it, along which everyone drove or passed at will ; while others testify that the fences, though partially destroyed and dilapidated in the winter, as was customary with most of the lots in the neighborhood, were renewed in the spring and the land cultivated, and that the passing across it in the winter, was by the permission of James Morrison, and gaps in the fence were left open for the accommodation of himself, his customers and neighbors, in hauling to and from his saw mill in the vicinity, and the boat-yard on the Potomac river near by.

From the course of argument in this Court we infer the point of dispute between the parties, turns mainly upon the question as to the actual possession *by inclosures*, of James Morrison and those claiming under him, including the defendant. The plaintiff asked two prayers, which were granted, and the defendants five prayers, all of which were refused. By the plaintiff's first prayer the jury was instructed that if they believed from the evidence Lot No. 3,905 was correctly located, the plaintiff is entitled to recover whatever portion of the land in controversy the jury shall believe " has not been held by the defendants or one of them, and those under whom he or they claim, for twenty consecutive years before the bringing of this suit, by a real and substantial *inclosure*, which was during said period an exclusive, continuous and adverse possession, by inclosure.'' Two objections are made by the appellants to this prayer :

1st. That it fails to submit to the jury the facts necessary to show the plaintiff's title.

2d. That it lays down incorrectly the law with regard to the adverse possession necessary to be shown in order to bar the action. In disposing of the first objection it is necessary to refer briefly to the plaintiff's evidence of title contained in the bills of exceptions. This consisted of

1st. The patent to Thomas Johnson of March, 1814, above referred to.

2nd. Thomas Johnson's will, dated 4th July, 1818, proved in December, 1819, devising Lot No. 3,905 to his son Joshua Johnson, and his grandson Thomas J. Graham, each one half thereof.

3d. Deed of January, 1833, from John Graham, trustee, conveying *to the plaintiff* the title and estate of Thomas J. Graham; this deed purports to have been made under the authority of a decree of Frederick County Court, sitting in Equity, which is referred to in the deed.

4th. Deed of August 3d, 1858, from William J. Ross, executor of the will of Joshua Johnson, deceased, conveying *to the plaintiff,* the title and estate of Joshua Johnson; with this deed was offered in evidence the record of Joshua Johnson's will and of the proceedings of the Orphans' Court, showing the executor's report of sale and its final ratification. Neither the will nor the record of the Orphans' Court is set out in the bill of exceptions; nor the decree and other proceedings of Frederick County Court, under which Graham, the trustee, acted. These were, of course, essential to be shown, in order to establish the validity of the deeds from Graham, the trustee, and Ross, the executor; no exception, however, was taken to the admissibility of the deeds in evidence; and in the argument of the cause in this Court the counsel for the appellants admitted the regularity of the chancery proceedings, the power of Graham, the trustee, and the power of Ross, the executor, to execute the deeds to the plaintiff offered in evidence. In the face of those admissions the appellants' objection must be considered merely formal. The prayer fails to submit to the jury " to find whether or not the patent was granted of the lot, whether the will of Thomas Johnson was executed and conveyed it, whether the chancery proceed-

ings in Frederick were had, whether the deeds of Graham and Ross were executed." So the appellants' objection is stated in their brief. These facts, it is argued, are essential to the plaintiff's title, and ought to have been submitted to the jury. In granting the plaintiff's first prayer the Court assumed them. Is this error for which the judgment would be reversed? Unquestionably, before the Act of 1862, ch. 154, such was the settled law of this Court; many judgments have been reversed for this cause, it being established that in a prayer framed like this, every fact necessary to make out the plaintiff's title must be submitted to the jury, although the proof in support of it might be clear and uncontradicted, and not really a matter of contest before the jury, and the objection to the frame of the prayer made for the first time in the appellate Court. Under this practice parties were often taken by surprise and injustice done. To cure this evil, the Act of 1862, ch. 154, was passed, re-enacting section 12, Art. 5, of the Code, and adding thereto important provisions regulating the practice of this Court. The section is as follows:

" The Court of Appeals shall in no case decide any point or question which does not appear by the record to have been tried and decided by the Court below; but no prayer or instruction shall be deemed defective by reason of any assumption therein of any fact by the said Court, or because of a question of law having been thereby submitted to the jury, unless it appears from the record that such objection was taken at the trial."

The construction of this Act has not been distinctly settled. In the *M. & C. C. of Balt. vs. Poultney & Trimble,* decided at April Term, 1866, it was held that where the Court below submitted to the jury to find a fact, of which there was not evidence legally sufficient, it was error and ground for reversal; the Act of 1862 having no application to such a defect.

In *Lane, Adm'x of Horine, vs. Lantz, ante,* 211, a defect in the plaintiff's prayer, granted by the Court below, in failing to submit a fact to be found by the jury, of which there was proof, was held to be cured by the Act of 1862; the objection having been made for the first time in this Court. The design of this Act appears to have been to extend the provisions of the Act of 1825 (Code, Art. 5, sec. 12) to prayers and instructions; and to require that certain omissions and defects in them shall not be considered in the Court of Appeals, unless the record shows specific objections have been made to them at the trial, and they have been passed on by the Court below. The Act does not alter the law governing prayers and instructions, or authorize a Court to take from the jury the finding of facts, or to submit to them the decision of questions of law; it simply provides that if a prayer is defective for either of these reasons, the objection must be made at the trial and cannot be urged for the first time in the appellate Court. These defects have often occurred through mere inadvertence in the hurry of the trial, and might have been corrected if the attention of the Court had been called to them at the time, and although in reality the appellant has not been injured by them, and perhaps never discovered them till the record has come into this Court; yet as the law before stood, they were fatal, and this Court has been obliged to reverse. In that way parties have often been taken by surprise and much injustice has been done. Where a Court is asked by a prayer to take from the jury, or assume as proved, facts that are really in dispute, it is very easy to make the objection at the trial; but if facts are not really disputed, it is difficult to see how a party can be injured by a failure to submit them to the jury, and it would be very unjust to grant him a reversal of the judgment on that account; to prevent such injustice the Act of 1862 was passed.

The present case seems to us to come within its provis-

ions. These are very comprehensive and apply as well to an instruction which assumes several facts, as to one in which only one fact is assumed. If there be proof to sustain them, competent to go to the jury, and the Court below in its instruction assumes them instead of submitting them to the jury, the objection, under the Act of 1862, must be taken at the trial, otherwise it cannot be insisted on in this Court as cause for reversal.

The second objection of the appellants to the plaintiff's first prayer presents the question of adverse possession. On this subject the law is well settled by a series of decisions in this Court. *See Armstrong vs. Risteau,* 5 *Md.* 256, 270; *Hoye vs. Swan,* 5 *Md. Rep.,* 237; *Casey vs. Inloes,* 1 *Gill,* 430, 490; *Morgan vs. Slider,* 22 *Md. Rep.,* 267, 269, 270, 274.

Twenty years continuous, exclusive, adverse possession by actual inclosure, by the defendants or one of them and those under whom they claim, will bar the action, and this we understand to be the proposition contained in the plaintiff's first prayer. We do not construe it as requiring possession for that length of time to have been held both by the defendants and those under whom they claim. Such possession for that period either by James Morrison, the grandfather, or by him and those claiming under his will, would defeat the action. The plaintiff's second prayer is not open to the objection, that it assumes the facts essential to establish the plaintiff's title; that objection ought to have been taken below; the observations we have made on this subject in considering the first prayer being alike applicable to this.

We think, however, it was erroneous in stating that the possession must not only be by actual inclosure, but that the inclosure must be *continuous.* Such instruction, in view of the evidence, was calculated to mislead the jury—actual inclosure is necessary; but the fences might have been partially removed at different periods, to enable

the occupant and others to pass through by his permission, or the fences might have been partially destroyed at intervals during the Winter, and renewed in the Spring for the purpose of cultivating the lands, as testified by some of the witnesses; and though the inclosure in that way would cease to be continuous in one sense ; yet such temporary breaches would not be sufficient to defeat a claim by adverse possession.

The legal propositions contained in the first and second prayers of the defendants are correct and ought to have been granted. The defendants' third prayer ought also to have been granted, there being some evidence in the cause for the consideration of the jury, tending to prove the facts therein stated. The fourth and fifth prayers raise the same questions as are presented by the first and second bills of exceptions and relate to the admissibility of evidence. Before the passage of the Act of 1852, ch. 177, (Code, Art. 75, s. 57, &c.,) a witness not sworn on the survey and who did not point out to the surveyor a line or object located on the plots was incompetent to testify at the trial, with reference to the location of such line or object. *Stoddert vs. Manning*, 2 *H. & G.*, 147. By that Act, sec. 7, it is provided, "That the plots and certificates of survey in every case may be amended at bar, and objects to which the proof applies may be placed on the plots, and *witnesses may be examined who were not sworn on the survey.*" * * * * * * " Provided the Court shall be satisfied the ends of justice will be attained by such amendment of plots and admission of witnesses." According to our construction of this section, it merely dispenses with the necessity of having a witness *sworn* on the survey in order to make him competent to testify at the trial; but does not render a witness competent to give evidence at the trial with regard to the location of any object upon the plot, who was not upon the survey at all. To allow such testimony would lead to the greatest confusion and uncertainty.

The object of location is to give certainty to the claims and pretensions of the parties and prevent surprise. *Mundell vs. Perry*, 2 *G. & J.*, 205.

This would be defeated by permitting a witness to be examined in Court who was not present at the survey, and did not point out to the surveyor the objects, the location of which is to be proved at the trial. The words of the Act of 1852 do not require us to adopt the construction contended for by the appellee's counsel, and we think the fourth and fifth prayers of the defendants ought to have been granted. As the case must be sent down for a new trial, it is proper to say that we affirm the ruling of the Circuit Court on the plaintiff's exception.

*Judgment reversed*

*and procedendo ordered.*
