ROBERT H. FRANKLIN, Claimant of property Attached
of GEORGE HUGHES & Co. vs. HORACE B. CLAFLIN
and others, trading as H. B. CLAFLIN & Co.

*Attachment—Sufficiency of Affidavit of non-residence—When
the omission of a material fact from a prayer cannot be taken
advantage of on Appeal—Act of 1862, ch. 154—Effect of
reservation of interest in the Vendor of Chattels, where the
Sale purported to be absolute—Prayer held to be bad as
calculated to mislead the jury—Contract reduced to writing
to be proved by the Contract itself—Construction of secs.
5046 and 5128 of the Bankrupt Act, as applicable to an
Attachment issued more than four months before proceedings
in Bankruptcy.*

The affidavit in an attachment against non-residents sufficiently avers the
jurisdictional fact of non-residence if it states that "the defendants are not
citizens of the State of Maryland, and do not reside therein," and it is not
necessary to state that the defendants "are not citizens nor is either of them
a citizen of Maryland, and do not nor does either of them reside therein."

The jurisdictional fact need only be set forth with substantial accuracy, with-
out negativing every possible conclusion to the contrary.

Under the Act of 1862, ch. 154, the omission of an essential fact from a prayer
cannot be taken advantage of on appeal, where no objection on this ground
appears to have been taken at the trial.

Nothing can be more utterly inconsistent with a contract of sale of chattels
purporting to be absolute, than the existence of a right or interest in or con-
trol over the same in the vendor. If such a reservation be secret it is evi-
dence of collusion, if open, it tends to hinder and delay creditors and is
legal or constructive fraud.

Where a bill of sale of chattels was assailed for fraud, under proceedings in
attachment, a prayer was offered by the claimant of the property attached,
announcing the general proposition, that if the goods and chattels attached

belonged to the claimant at the time of levying the attachment, the verdict must be for the claimant. HELD:

That this prayer, although correct in the abstract, might have misled the jury, without a qualification to the effect, that if the sale was made with fraudulent intent or to hinder and delay creditors, the claimant was not entitled to a verdict.

A contract when reduced to writing is to be proved by the writing itself, and all previous stipulations relating to the subject, not embodied in the written contract, are excluded.

An attachment was issued on the 28th of February, 1876, against goods alleged to have been fraudulently assigned by the defendants. On the 27th of June, 1876, the defendants were adjudicated bankrupts, and there was nothing to show that the proceedings in bankruptcy were commenced before that time. HELD:

1st. That the attachment was not affected by the bankruptcy proceedings.

2nd. That the rights of the attaching creditors were regulated by sec. 5128 of the Revised Statutes of the United States, and not by sec. 5046, which refers only to conveyances made by a bankrupt in fraud of his creditors.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs offered the ten following prayers:

1. That if the jury find from the evidence, that the alleged sale by Hughes & Smith, trading as James Duncan & Co., to Robert H. Franklin, the claimant, was made with intent to defraud the creditors of the said Hughes & Smith, then the said sale is void, and gives no title to the said claimant to the property so sold.

2. That if the said sale mentioned in the first prayer was made with intent to hinder and delay the creditors of said Hughes & Smith, the said sale is void, and gives no title to the claimant in this case to maintain his claim, even though the jury may believe that the parties to said sale intended ultimately to pay their said creditors.

3. That if the jury find that at the time of the alleged sale of the property mentioned in the evidence by George Hughes and Thomas A. Smith, to R. H. Franklin, the said Hughes & Smith were largely indebted, and had no sufficient means to meet their obligations or to continue their business, except through the indulgence of their creditors ; and if they further find that said Hughes & Smith, while in the condition above mentioned, sold their stock of goods and property in Baltimore to the claimant, as mentioned in evidence, and that said property was all the assets of the firm of James Duncan & Co. ; and if they shall further find that said stock of goods was worth more than $10,000 at the time of said sale, and that said Franklin paid only $100 in money therefor, and that the other consideration of said alleged sale was the agreement of said Franklin, to pay the debts of James Duncan & Co., amounting to about $60,000 ; and if they shall further find that said Franklin was the brother-in-law of said Hughes, and had been the agent of said Hughes & Smith, to conduct this Baltimore business up to the date of said alleged sale, and knew that said Hughes & Smith were threatened with serious embarrassments, and that said Franklin, at the time of said alleged purchase of said property, had not more than $500 of his own, and was wholly unable with his own means to pay said indebtedness, and was known so to be by said Hughes & Smith ; and if they further find that said Hughes & Smith took no security from said Franklin for the performance of said covenant on his part ; and if they shall further find, that it was in the contemplation of the parties to the sale that said Franklin could only pay the debts out of the property so conveyed, and only by selling the same in the usual course of business ; and that it was known to the said Hughes & Smith and Franklin, and so understood by them at the time of said alleged sale, that said Franklin would be unable to comply with his covenant to carry on

the business he had purchased, unless said Hughes & Smith could aid him, and unless the firm of George Hughes & Co. could effect some arrangement with their creditors, and continue their business; and shall further find that said George Hughes & Co. failed to effect any arrangement with their creditors, and have ceased business, and that their assets will yield only about $16\frac{2}{3}$ cents on the dollar to their creditors; and shall further find that the said sale was evidenced by the bill of sale offered in evidence, and that the same was not placed upon record for about ten days after its delivery to said Franklin; and shall further find that shortly after the said alleged sale, the said Franklin executed an assignment for the benefit of creditors, and left the same in the hands of his counsel, to be delivered, if any attachment should be issued by any creditors of the said Hughes & Smith, or if the said George Hughes & Co. should be unable to effect a settlement with their creditors, then the said sale is void, so far as the plaintiffs are concerned, and will not enable the claimant to recover.

4. That if the jury shall find the facts stated in the third prayer of the plaintiffs, then the sale relied upon by the claimant is accompanied by such badges of fraud as throw discredit upon it, and put the burthen upon the claimant of proving that the same was *bona fide* and not intended either to defraud the creditors of the grantors, Hughes & Smith, or to delay and hinder said creditors in the collection of their claims.

5. That if the jury find that at the time of the alleged sale of the property mentioned in evidence by George Hughes and Thomas A. Smith, trading as James Duncan & Co., they were in embarrassed circumstances, and that they failed in business at or about the time of said alleged sale, and if they find that Franklin was wholly unable of his own means to pay the debts of Jas. Duncan & Co., and was known to said Hughes & Smith so to be at the

time of said alleged sale; and if they further find that it was known to the parties and so understood by them at the time of said sale, that said Franklin could not comply with his part of said contract, and was not expected to comply with his part of said contract, unless George Hughes & Co. could effect an arrangement with their creditors, and aid him, said Franklin, in meeting the debts of Duncan & Co., by obtaining extensions thereof or otherwise; and if they shall further find, that said George Hughes & Co. were in fact insolvent, and that they were unable to make any arrangement with their creditors, then the alleged sale to Franklin is not such as to sustain his claim of property in this case, and he is not entitled to their verdict on the issue joined.

6. If the jury find that notwithstanding the alleged sale by Hughes and Smith to Franklin, the said Hughes and Smith, or either of them, retained any interest in or control over the property so sold, the said alleged sale is void, and passed no title to said Franklin.

7. If the jury find from the evidence that the alleged bill of sale was not executed on the day it bears date, but that it was executed at a subsequent date and antedated, such antedating under the circumstances shown by the evidence in this case is a badge of fraud.

8. That the bankruptcy proceedings offered in evidence, subject to exception, are inadmissible for any purpose under the pleadings in the cause, except for the purpose of throwing light upon the pecuniary condition of the defendants, Hughes & Smith, at the time of the alleged sale.

9. That the evidence offered, subject to exception, by the claimant, to show that one of the considerations for the execution of the bill of sale offered in evidence, was a covenant or agreement by the claimant to pay the debts of the grantors, is inadmissible to support such bill of sale.

10. That the evidence mentioned in the seventh prayer of the plaintiffs is inadmissible to support the alleged sale

from the defendants to the claimant, if they find that the bill of sale offered in evidence was executed and delivered by the defendants to the claimant.

The plaintiff offered also the six following supplemental prayers:

1. That the claimant is not entitled to their verdict under his second prayer, if the jury find the facts stated in plaintiffs' first, second, third and fourth prayers.

2. That if the jury find that the facts stated in the plaintiffs' first and second prayers, the fact that the claimant paid money under the alleged purchase of property will not prevent said sale from being null and void.

3. That if any part of the claim of the plaintiffs was due at the time the attachment was issued, the jury cannot find for the claimant, under the first prayer of the claimant.

4. That there is no evidence in this case legally admissible to show the contract of sale alleged to have been made to Franklin, except the bill of sale, the deed and the covenant in writing, all dated January 8th, 1876, and offered in evidence, and all verbal negotiations between the parties as to said sale, were merged in said instruments, and are inadmissible to prove the terms of said contract of sale.—(This prayer is granted, but with the qualification that all the evidence may be considered in passing upon the *bona fides* of the transaction.)

5. That the proof necessary to establish the fraud in this transaction, is only such proof as would be necessary to satisfy the jury of any other fact, and the plaintiffs pray the Court so to instruct the jury in connection with the claimant's sixth prayer, should the Court grant said prayer.

6. In passing upon the question of fraudulent intent, the jury are at liberty to infer such intent from facts proven in the cause, and in order to ascertain the motives and designs of the parties, the jury may look to all the circumstances surrounding the transactions, and every fact, however trivial, which can throw light upon the subject.

And the claimant offered the six following prayers:

1. If the jury believed from the evidence that the attachment in this case was issued before the debt of James Duncan & Co. to the plaintiffs, upon which said attachment is founded, became due and payable, their verdict must be for the claimant.

2. If the jury believe from the evidence that the goods attached in this case were the property of the claimant, Franklin, at the time of issuing and levying the attachment, their verdict must be for the said Franklin.— (Granted as qualified by plaintiffs' first and second prayers.)

3. If the jury believe that George Hughes and Thomas A. Smith, being the owners of the goods attached, did sell and deliver the same to the claimant, Franklin, on or about the 8th day of January, 1876, in consideration of $100, and of the assumption by said Franklin of the indebtedness of James Duncan & Co., and that the bill of sale of said date which has been given in evidence, was executed, acknowledged, sworn to, delivered and recorded, as thereby appears, and the paper of the same date, assuming the said indebtedness, was executed by said Franklin, and delivered to said Hughes & Smith at the same time, in good faith, and that said Franklin, in pursuance thereof, did pay several thousand dollars of said indebtedness prior to the attachment; and if the jury shall further find, that said sale was fair and *bona fide*, and was made without intent to hinder, delay or defraud the creditors of George Hughes & Co., or said Hughes & Smith, then their verdict must be for the claimant, Franklin.

4. That the *bona fide* transfer of personal property by the owner thereof by sale, accompanied by delivery, effectuates the title in the purchaser, and no written conveyance is necessary under the laws of this State to make the sale binding. And if the jury shall find from the evidence that George Hughes and Thomas A. Smith, being the owners of the merchandise in controversy, sold and trans-

ferred possession of the same to the claimant, Franklin, before the issuing of the attachment, in consideration of the payment by him of the sum of $100, and the assumption by him of all the liabilities of the said Hughes & Smith, under the name of James Duncan & Co., and that said transaction was fair and *bona fide*, and not intended to hinder, delay or defraud the creditors of said Hughes & Smith, or George Hughes & Co., then the title to and ownership of said property passed to the said Franklin, and the verdict must be for the claimant.

5. The claimant, Franklin, protesting that the transaction set forth in his third and fourth prayers, was fair and *bona fide*, and was not in actual or contemplated fraud of any of the creditors mentioned in said prayers or any other persons, nevertheless prays the Court to instruct the jury : That even if they should find under any of the instructions of the Court, that said transaction was in fraud of the creditors of said Hughes & Smith, or George Hughes & Co., their verdict must still be for the claimant, in view of the bankruptcy of George Hughes & Co., and said Hughes & Smith, and the appointment of an assignee of said bankrupts, and the assignments made to him by the Court in Bankruptcy, as given in evidence by the claimant.

6. That fraud is not to be presumed, but must be proven, and that the plaintiffs assailing the transaction in controversy on the ground of fraud, assume the burden of satisfying the jury affirmatively, that the fraud so alleged existed in fact, and unless the plaintiffs do so satisfy the jury, their verdict must be for the claimant.

The Court, (DOBBIN, J.,) granted the first, second, sixth and eighth original prayers, and the second, third, fourth, fifth and sixth supplemental prayers of the plaintiffs, (the fourth supplemental prayer being granted with the qualification annexed,) and granted the first, second, third, fourth and sixth prayers of the claimant, (their second prayer being granted with the qualification annexed,) and

refused the third, fourth, fifth and seventh original prayers of the plaintiffs, because the whole facts given in evidence were not set forth, and refused also their ninth and tenth original prayers, and their first supplemental prayer as offered, but granted it with the erasure of the words third and fourth, and refused the fifth prayer of the claimant.

The claimant excepted. The jury rendered a verdict for the plaintiffs, and judgment was entered accordingly. The claimant appealed.

The cause was argued before BARTOL, C. J., BOWIE, MILLER, ALVEY and ROBINSON, J.

*Henry Stockbridge* and *S. Teackle Wallis*, for the appellant.

The Court erred in granting the sixth prayer of the plaintiffs, as the same was against law, and was calculated to mislead the jury as to the question submitted to them. The question for the jury to decide was, had there been an actual and *bona fide* sale and transfer of the property to the appellant? If there had been, his right to their verdict could not be defeated by the fact that his principal creditors had "an interest in the property sold" to him, or in his making the most it was possible to make of them; or that for their protection they exerted their influence with him to have the business conducted as judiciously, carefully and profitably as it could be conducted. But the instruction given authorized the jury to conclude that such an interest in the property or business of the appellant, or the exertion of such an influence upon him in the management of his business, was conclusive proof that the "sale to him was void, and passed no title" to him. The misleading instruction therefore should not have been given. *Clements vs. Smith's Adm'rs,* 9 *Gill,* 160.

It instructed the jury that even if the sale were *fair* and *bona fide,* as the claimant's proof showed, it was still void,

if the vendors retained an interest in the goods sold. This cannot be maintained.

The Court further erred in granting the plaintiffs' first supplemental prayer, and in qualifying as it did, the claimant's second prayer.

That prayer of the claimant was clearly law. If the property in question was his, it could not lawfully be made responsible by attachment, for the debts of the defendants, and it was the right of the claimant to have the jury distinctly told so. To attach *to a proposition telling them* so, any qualification whatever, was error. The claimant had a right to the independent instruction he asked. The qualifications annexed to this prayer of the claimant were indeed, in no proper sense, qualifications. They were distinct instructions—had been given as distinct instructions—and were virtually the opposites of this prayer. To mark this prayer granted "as qualified" by those, could but confuse and embarrass the jury; and so to do was error. *B. & O. R. R. Co. vs. Resley,* 14 *Md.,* 442; *Harrison vs. M. & C. C. of Balto.,* 1 *Gill,* 264.

The Court ought at least to have instructed the jury, *e converso* likewise, that the plaintiffs' prayers referred to in the first supplemental instruction were only true, except as qualified by the claimant's second prayer.

The Court erred again in granting the plaintiffs' fourth supplemental prayer. It had previously and properly granted the fourth prayer of the claimant, and in so doing had told the jury, that there was evidence from which they might find that the title to and ownership of the property in controversy, passed to the claimant, irrespective of the existence or execution of any bill of sale. It could not do less, or otherwise. The evidence was absolute and uncontradicted, that terms of purchase and sale were agreed on; that those terms were carried out; that "the purchase was made in good faith;" that the consideration passed, and that the vendee took and held possession of

the property which he bought. To give legal force to such a transaction, no bill of sale was necessary, and if from over-caution or ignorance of legal requirement an act is performed which is pure surplusage, no error in the form of such unnecessary act can invalidate the actual legal transfer. A bill of sale executed under such circumstances, is not a written contract closing negotiations for a business transaction in which all previous negotiations are merged, but is simply proof of a bargain and sale, and if defective *as proof*, cannot preclude other proof of the transaction or invalidate the transaction itself. The instruction was therefore wrong in itself; and it was also wrong as in conflict with the other instruction given by granting the claimant's fourth prayer. *Cumberland Coal Co. vs. Tilghman*, 13 *Md.*, 74.

The appellees' first, second and sixth prayers, and first and second supplemental prayers, ought none of them to have been granted, inasmuch as no one of them requires the jury to find that the appellees were creditors of James Duncan & Co., or of Hughes and Smith, at the time when the sale, which is impeached, was made by the latter to the appellant, or even at the time when the attachment was issued. If not creditors, at the time of sale, or at all events creditors at some time, the appellees have no standing in Court to impeach the title of the appellant, and the sale was valid as to them, no matter if void against creditors. The appellees themselves gave evidence of the appellant's *prima facie* title, under the bill of sale, accompanying it by proof that they were creditors at the time of its execution, as the basis of their right to assail its validity. Their prayers assert that right and assail the validity of the transfer, as against the appellees, without requiring the jury to find the facts upon which alone such a claim could rest.

Upon the same grounds the eighth prayer of the appellees should have been refused, for unless they were credi-

Franklin, Claimant *vs.* Claflin & Co.

tors of Hughes and Smith, when the attachment was issued, it certainly could give them no rights as against the bankrupt's assignee, though issued more than four months before the adjudication in bankruptcy. The prayer should have required the jury to find that the appellees were creditors when they issued the attachment, before they could deny the rights of the assignee under the bankrupt proceedings.

The attachment should be quashed, because the affidavit did not sufficiently aver the jurisdictional fact of non-residence of defendants. It avers that the defendants " are not citizens of the State of Maryland and do not reside therein." It should have been " are not citizens, nor is either of them, a citizen of Maryland, and do not, nor does either of them, reside therein." It is very obvious that the affidavit that any four men are not citizens of Maryland, is perfectly consistent with the possibility that any one, two or three of them may be. The point is narrow and technical, but not more so than the many others which the Court has felt bound to sustain, where the requisite jurisdictional facts have not been precisely averred.

*William A. Fisher,* for the appellees.

The question as to the fraud or *bona fides* of the pretended sale, was fully presented to the jury in a manner favorable to the appellant. (See his second, third, fourth and sixth prayers ; the first, second and sixth prayers of the appellees ; the second and fifth supplemental prayers.)

The question whether the debt was due was also fairly laid before the jury, and they found that over $3300 of the amount claimed was due. (See first prayer of the appellant.)

The fifth prayer of the appellant was properly refused. The assignee had taken no part in the proceedings, or in any manner invoked or submitted himself to the jurisdic-

tion. In his absence, the bankruptcy and conveyance to the assignee cannot affect the rights of the parties litigant. *Revised Statutes of U. S.*, sec. 5046; *Kent vs. Downing*, 10 *Bank. Register*, 538; 8 *Bank. Register*, 533–7; *Eyster vs. Gaff*, 1 *Otto*, 521; *Doe vs. Childress*, 21 *Wallace*, 643; *Ranahan vs. O'Neal*, 6 *Gill & Johns.*, 301. The prayer was not applicable to any issue in the cause.

Bowie, J., delivered the opinion of the Court.

The appellees Claflin & Co., trading as partners in New York City, under the name of H. B. Claflin & Co., (including several persons, among them William S. Dunn,) sued out of the Superior Court of Baltimore City, on the 18th of February, 1876, a writ of attachment on warrant against the firm of "George Hughes & Co.," as non-resident defendants. The cause of action on which the attachment was founded and annexed to the warrant, is an account of H. B. Claflin & Co., against James Duncan & Co. of Baltimore, amounting to $5657.64, with a written guaranty of George Hughes & Co. attached, to the amount of $7500. The short note declared upon the guaranty, and averred that the plaintiffs on faith of the same, sold goods to James Duncan & Co. to the amount of the account filed, which was over-due, and the said Duncan & Co. had refused to pay, etc.

This attachment was laid in the hands of Robert H. Franklin, the appellant, and returned "attached as per schedules A & B."

The appellant appeared at March Term, 1876, and filed in writing his claim to the property attached, averring the goods were his and not the goods of the defendants against whom the writ issued.

To this claim the plaintiffs (appellees) replied, that the goods were not those of the appellant, but are subject to the attachment. Issues being joined and the verdict and judgment being in favor of the appellees, the claimant appealed.

At the trial the plaintiffs and claimant, severally submitted a series of prayers, some of each of which were granted and some rejected; and others modified by the Court, to which rulings of the Court, the claimant excepted.

The appellant in addition to the exceptions, moves this Court to quash the attachment for defects apparent on the face of the warrant; "because the affidavit does not sufficiently aver the jurisdictional fact *of non-residence of defendants*. It avers that the defendants are not citizens of the State of Maryland, and do not reside therein." It should have been, "are not citizens, nor is either of them, a citizen of Maryland, and do not, nor does either of them, reside therein."

It is urged "that it is obvious that the affidavit that any four men are not citizens of Maryland, is perfectly consistent with the possibility that one, two or three of them may be." It is not pretended that any one of the defendants is a resident, but that such might be the case, the affidavit to the contrary notwithstanding.

The language of the jurat in this case, is strictly in conformity with the form of words prescribed by the Code of Public General Laws, Art. 10, sec. 4, substituting the plural for the singular number.

In the opinion of this Court it sufficiently affirms the jurisdictional fact of non-residence necessary to authorize the magistrate to order the attachment.

In the case of *Brannan vs. Israel & Patterson*, 1 *Gill*, 380, a motion was made to quash the attachment against an absconding debtor, because among other reasons assigned "the proceedings did not disclose upon their face a compliance with the Act (1795, ch. 56,) in that they do not aver the defendant had actually run away, absconded or fled from justice, or secretly removed himself from his place of abode, with intent to evade the payment of his debts," but that affidavit affirmed, "that the debtor has

removed from his place of abode with intent to injure and defraud his creditors.'' It was held, this was a sufficient compliance with the Act of 1795, ch. 56, in that particular.

A reasonable construction is to be given to every legal instrument. Certainty to a general intent is all that is required. The term '' indebted '' required in the affidavit, it has been held is not to be construed in a technical or strict legal sense. 8 *Gill*, 194; *Smith vs. Gilmor*, 4 *H. & J.*, 177. In the latter case the action was for unliquidated damages.

From these precedents, we think it is clear that the jurisdictional fact need only be set forth with substantial accuracy, without negativing every possible conclusion to the contrary. The affidavit in this case conforms to this standard, and the motion to quash must therefore be overruled.

At the trial the appellees offered evidence tending to prove that the firm of H. B. Claflin & Co. was composed of the persons named as plaintiffs; that the firm of James Duncan & Co. was composed of George Hughes and Thomas A. Smith, two of the defendants in this case, and the firm of George Hughes & Co., was constituted of the persons named as defendants, including said Hughes and Smith, and that none of the defendants were at the time of issuing the attachment, or at any time, citizens of the State of Maryland, or residents thereof; that the plaintiffs held the written guaranty filed in the case, from the firm of George Hughes & Co. for the payment of such bills as might be incurred by James Duncan & Co.; that the plaintiffs sold and delivered to the latter under the guaranty, the goods named in the bills annexed, and filed with the affidavit, and they were due and unpaid at the time of the institution of the suit.

The plaintiffs also offered evidence of a bill of sale, dated the 8th of January, 1876, from George Hughes and Thomas A. Smith, to Robert H. Franklin, '' in considera-

tion of the sum of $100 and other good and valuable con-
siderations," whereby the grantors bargained and sold
all their right, title. interest and estate in, and to a stock
in trade, in the store and premises, Nos. 216 and 218 West
Baltimore St , in the City of Baltimore, etc.　They then
offered evidence tending to show that such sale was fraud-
ulent; made for the purpose of hindering and delaying
the creditors of James Duncan & Co. and of George
Hughes & Co., and at the time of said sale, the said
Hughes and Smith and George Hughes & Co. were insolvent,
and *subsequent to said sale, said Hughes and Smith continued
to retain an interest in and control over said property.*

The appellant (claimant) offered evidence tending to
prove that he was originally a member of the firm of
"James Duncan & Co.," which firm was dissolved, and
the establishment bought by George Hughes and T. A.
Smith, who conducted the business at the same stand,
under the name of James Duncan & Co., and the claimant
became their manager, or was connected as employé,
until the latter part of 1875, when he negotiated for the
purchase of the establishment of Hughes and Smith, and
the terms were agreed upon about the 1st of January,
1876 ; when he received the bill of sale offered in evidence
by the plaintiffs, and a deed of the store where the business
was carried on ; that the consideration named in each
paper, viz.. $100, and "other good and valuable considera-
tions," were the actual consideration for the purchase ;
that the $100 was actually paid, and the other considera-
tions were the assumption by him of all the debts of James
Duncan & Co., amounting to about $59,000, and that these
were assumed by a written agreement, dated 8th January,
1876, therewith exhibited.

It was also in evidence that the execution of the papers
and payment of the money were simultaneous ; that from
that time the claimant had exclusive possession of the
store and stock, as his own property, and conducted the

business as his own ; and prior to the issuing of the attachment in this case, he had paid several thousand dollars of the liabilities of *James Duncan & Co.*, and bought goods to replenish the stock from the proceeds of sales made in the store of the goods purchased of Hughes and Smith ; the claimant having added no money or goods of his own to the stock purchased of Hughes and Smith, and that the sale made to him, and the purchase made by him of the property of James Duncan & Co. was *bona fide*, etc. The claimant further offered evidence to prove that the bills on which the attachment was issued, were not due at the time of issuing thereof, and that the defendants George Hughes & Co. and George Hughes and Smith, were adjudicated bankrupts, and their property assigned on the 27th of June, 1876.

The testimony being closed, the appellees offered ten prayers maintaining their theory of the law applicable to the case. The appellant responded by a series of six prayers supporting his views. Whereupon the appellees submitted a series of six supplemental prayers.

The propositions affirmed by the prayers of the appellees as modified by the Court, and excepted to, are substantially as follows :

1st. If the jury find from the evidence, that the alleged sale by Hughes and Smith, trading as " James Duncan & Co.," to the claimant, was made with intent to defraud the creditors of said Hughes and Smith, etc., or to hinder and delay the creditors of the said Hughes and Smith, the said sale was void, and gives no title to said claimant, even though the jury may believe the parties to said sale, intended ultimately to pay their creditors.

2nd. "If the jury find, that notwithstanding the alleged sale by Hughes and Smith, to Franklin, (the claimant,) the vendors, or either of them, retained any interest in, or control over the property, the sale was void."

3rd. The jury cannot find for the claimant, if they believe from the evidence, the goods were sold by Hughes

and Smith, trading as Duncan & Co. to the claimant, with intent to defraud, or to hinder and delay the creditors of Hughes and Smith, although the jury might believe the parties to said sale intended ultimately to pay their said creditors.

4th. If the jury find the facts stated in the plaintiffs' first and second prayers, (*i. e.* that the goods were sold with intent to defraud or hinder and delay the creditors of Hughes and Smith,) the fact, that the claimant paid money under the alleged purchase of property, will not prevent said sale from being null and void.

5th. That if any part of the claim of the plaintiffs, was due at the time of issuing the attachment, the jury cannot find for the claimant, under the first prayer of the claimant.

(The prayer of the claimant referred to in this proposition, declared, if the jury find the attachment was issued before the debt upon which it was founded was due, their verdict must be for the claimant.)

6th. That there is no evidence in the case, legally admissible, to show the contract of sale alleged to have been made to Franklin, (the appellant,) except the bill of sale, the deed and covenant in writing, all dated the 8th of January, 1876, and offered in evidence; and all verbal negotiations between the parties as to said sale, were merged in said instruments, and are inadmissible to prove the terms of the contract. This prayer was granted with the qualification, that all the evidence might be considered in passing upon the "*bona fides*" of the transaction.

7th. The Court having granted the appellant's sixth prayer, declaring "that fraud is not to be presumed, but must be proven," and the burden of proof was upon the party assailing the transaction, this (being the fifth supplemental,) instruction of appellees, affirmed in connection with the appellant's sixth prayer, "that the proof necessary to establish fraud in this transaction, is only such

proof as would be necessary to satisfy the jury of any other fact.''

8th. That in passing upon the question of fraudulent intent, the jury are at liberty to infer such intent from the facts proven in the cause; and to ascertain the motives and designs of the parties, the jury may look to all the circumstances and every fact, however trivial, which can throw light upon the subject.

The only prayer of the appellant, which was rejected, affirmed ''that even if the jury should under any instructions of the Court, find that the said transaction (the sale) was in fraud of the creditors of Hughes and Smith, or George Hughes & Co. their verdict must still be for the claimant, in view of the bankruptcy of George Hughes & Co.; and said Hughes and Smith, and the appointment of an assignee of said bankrupts, and the assignments made to him by the Court in bankruptcy as given in evidence by the claimant.''

The first, second, and sixth prayers of the appellees' first series, (which are embraced in the first and second propositions above stated,) are objected to, because they fail to require the jury to find the fact, that the appellees were creditors of James Duncan & Co., or of Hughes and Smith, at the time of the sale which is impeached, or at the time the attachment was issued.

This defect, it is argued is not one of those which the rules regulating appeals, required to be noted at the trial, and presented in the bills of exception.

It has been ingeniously urged that the omission of an essential fact, is not the assumption of a fact within the meaning of the rule above referred to. To assume a fact, in popular phrase, is to take for granted without proof. It may be done affirmatively or negatively, the effect is the same in which ever form it is done.

The mischief to be remedied by the rule, and the Act of 1862, ch. 154, from which the rule was derived, was to prevent surprise on the parties to a cause on appeal, by

raising questions, which were not disputed or contested in the Court below.

The Act of 1862, was very carefully considered and deliberately construed by this Court in the case of *Morrison & Kildow vs. Hammond's Lessee*, 27 *Md.*, 604, and *Everett & Dilly vs. The State*, 28 *Md.*, 191.

In each of which, facts essential to the right of the plaintiffs to recover, (being uncontroverted) were omitted from the prayer excepted to.  In the former it was held by this Court, "that these defects often occur through mere inadvertence in the hurry of the trial, and might have been corrected if the attention of the Court had been called to them at the time, and although in reality the appellant has not been injured by them, and perhaps never discovered them till the record has come into this Court; yet as the law before stood they were fatal, and this Court was obliged to reverse.  In that way parties have often been taken by surprise, and much injustice has been done ; * * * * * to prevent such injustice the Act of 1862 was passed," 27 *Md.*, 617.

In the latter case, the learned Judge referring to the facts omitted says, " All these were undisputed facts in the case, and most of them were proved by record evidence offered by the defendants themselves, and this objection is made for the first time in this Court.   Prior to the Act of 1862, ch. 154, such a prayer would unquestionably have been so defective as to require a reversal of the judgment.   But that law as construed in *Morrison & Kildow vs. Hammond's Lessee*, 27 *Md.*, 604, applies to this prayer, and prevents us from deeming it defective, no objection on this ground appearing to have been taken to it at the trial." 28 *Md.*, 207.

The only issue in this case was, whether the goods and chattels attached were the property of the appellant, or of the defendants.   The indebtedness of the defendants to the appellees had been indisputably proved.   The indebted-

ness is conceded in the appellant's first prayer, the only question relating to it, was whether the bills had become due when the attachment was issued.

The sixth prayer of the appellees' first series, is objected to, as contrary to law, and calculated to mislead the jury.

They contend that the question before the jury was, had there been an actual and *bona fide* sale of the property, and that the retention of an interest in, or control over it by the vendors, was not inconsistent with the good faith of the transaction.

Waiving for the present, the fact, that the bill of sale and deed of covenant of the 8th of January, 1876, purport to constitute an absolute transfer of all the right, title and interest of the vendors, to the claimant, the vendee, in and to the chattels, *choses in action, etc.* of the vendors, and that the retention of an interest in and control over it, would be in direct conflict with those muniments of the vendee's title, nothing could in our judgment, be more utterly inconsistent with a contract of sale purporting to be absolute, than the existence of a right or interest in, or control over the same in the vendor. If such reservation was secret, it was evidence of collusion; if open, it tended to hinder and delay the creditor, and was legal or constructive fraud.

It was further insisted, that the Court below erred, in granting the appellees' first supplemental prayer, and qualifying as it did, the claimant's second prayer.

The second prayer of the appellant, announced the general proposition that if the goods and chattels attached, belonged to the claimant, at the time of levying the attachment, the verdict must be for the claimant.

This was an abstract proposition assuming the question in dispute, viz., *the bona fides of the sale.* The qualification to prevent misapprehension, reiterated what had been before affirmed by the Court, that if the sale was made with fraudulent intent, or to hinder and delay creditors, the claimant was not entitled to the verdict.

The claimant's prayer although correct in the abstract, might have misled the jury and was properly qualified. 9 *Gill*, 156, 160.

The fourth supplemental prayer of the appellees is objected to on the ground that the bill of sale and deed of covenant, were not the sole evidence of the sale and delivery of the stock in trade, by Hughes and Smith to Franklin, that the terms of sale were previously agreed upon, etc., and the appellees' fourth supplemental prayer was in conflict with the appellant's fourth prayer, previously granted.

A comparison of these prayers will show, we think, there is not the conflict between them which is supposed to exist.

The appellant's fourth declares first, the general principle that the *bona fide* transfer of personal property by the owner, by sale, accompanied with delivery, confers title, and no written conveyance is necessary. And then affirms, if the jury find from the evidence, that Hughes and Smith, being owners of the merchandise, sold and delivered the same to Franklin, before the attachment, in consideration of the payment of $100, and the assumption by him of all the liabilities of Hughes and Smith, under the name of James Duncan & Co., and that said transaction was fair and *bona fide*, and not intended to hinder and delay their creditors, etc., then the title to such property passed to said Franklin.

The appellees' fourth supplemental does not controvert any of the propositions above recited, but asserts that in this case, the written evidence, the bill of sale and deed of covenant of the 8th of January, 1876, offered in evidence, is the only admissible evidence of the sale, and all verbal negotiations between the parties were merged in said instruments, and are inadmissible as evidence. The appellees' fourth supplemental enunciates an elementary principle of the law of evidence, that a contract when reduced

to writing, is to be proved by the writing itself, and all previous stipulations relating to the subject, not embodied in the written contract, are excluded.

The fifth prayer of the appellant, (the only one of his propositions which was rejected,) required the jury notwithstanding they might find the sale from Hughes and Smith to the appellant to be fraudulent, to find for the appellant, if they found that the said Hughes & Company and Hughes and Smith became adjudicated bankrupts, and their property was assigned to an assignee on the 27th of June, 1876.

In support of which position we are referred to section 5046 of the Bankrupt Act, Revised Statutes of the United States.

This section refers only to conveyances made by a bankrupt in fraud of his creditors, and declares that all such property shall, in virtue of the adjudication in bankruptcy, and the appointment of his assignee, be vested at once in such assignee, subject to the exceptions stated in the preceding section.

The rights of attaching creditors are regulated by section 5128 of the Bankrupt Act.

This section enacts that all attachments laid upon the property of the bankrupt, within four months next preceding the commencement of the proceedings in bankruptcy shall be void.   The Supreme Court of the United States, construing this section, held, that an attachment which under State laws is a valid lien, laid more than four months previously to the proceedings in bankruptcy, is not dissolved by the transfer to the assignee in bankruptcy. *Doe vs. Childress,* 21 *Wal.,* 643.

This Court in an analogous case, arising under the 35th section of the Bankrupt Act, decided to the same effect. *Jordan, Assignee vs. Downey,* 40 *Md.,* 412, 413.

The attachment in this case was sued out on the 18th February, 1876, more than four months before the adjudi-

cation and assignment in bankruptcy of the defendants, according to the evidence in this case, and there is nothing to show the proceedings in bankruptcy commenced earlier, consequently, the Court below was right in rejecting the fifth prayer of the appellant. Finding no error in the rulings upon the several exceptions, the judgment below will be affirmed.

*Judgment affirmed.*

(Decided 29th May, 1878.)

ALVEY, J., filed the following dissenting opinion :

I dissent in this case from the opinion of the majority of the Court, as to the construction placed on the fourth rule of this Court, regulating appeals. 29 *Md.*, 2.

Whether there was any actual injury done in this particular case, by the failure of the Court below to submit to the jury to find, whether the appellees were, at the time of the alleged transfer of the goods, and at the time of issuing the attachment, creditors of the defendants in the attachment, I shall not stop to enquire. It may be that there was none. I dissent, not because I think justice has been defeated in this case, by the construction adopted, but because of the danger, in my apprehension, that it may be defeated in other cases brought here for review.

The fourth rule of this Court, so far as the present question is concerned, simply embodies the Act of 1862, ch. 154 ; and it provides that " no instruction actually given, shall be deemed to be defective by reason of any assumption *therein* of any fact by the said Court, or because of a question of law having been thereby submitted to the jury ; unless it appear from the record, that an objection thereto for such defect was taken at the trial."

In the present case, the fact of the defendants' indebtedness to the appellees was not only not submitted to the jury by the instructions objected to, but the fact was not mentioned or referred to in the instructions as an element in the

case. In other words that fact was entirely ignored, in propositions which virtually instructed the jury, that upon finding certain facts, their verdict should be for the plaintiffs in the cause. And it is now held, that these instructions are embraced by the fourth rule for the regulation of appeals, and because they were not specially excepted to under the rule, no advantage can be taken of the defect in this Court. It is from this determination that I most respectfully dissent. I think to such a case the rule has no application.

The Act of 1862 was passed to remedy a defect that had grown to great evil. Cases after being fairly tried were frequently defeated because of technical defects in framing prayers for instruction to the jury. If a fact, the existence of which was proper to be found by the jury, was made the basis of an instruction, without submitting that fact to their finding, the instruction was regarded as erroneous; and this principle, while correct in the main, was carried to such an extreme nicety, that it was difficult, in a great many cases, to frame the prayers so as to be free from the objection. Any oversight or slight mistake, in this respect, in the frame of the prayer, was liable to be made the ground of an objection in this Court, *for the first time*, and by that means, many fair trials were defeated. As examples of such cases, I may refer to the cases of *The Railroad Co. vs. Resley*, 7 *Md.*, 297, and *Boyd vs. McCann*, 10 *Md.*, 118. Many other cases, where the same objection was allowed to prevail, might be referred to. It was to obviate objections of the character taken in the cases to which I have referred, that the Act of 1862 was passed. But I never supposed for a moment that the Act was intended to apply to the case of an instruction, erroneous in itself because not predicated of facts necessary for its support.

The terms of the rule would seem to be sufficiently explicit to prevent all doubt in regard to its meaning.

There must be not only an assumption of fact by the Judge, but that assumption must be in the instruction; that is to say, it must appear *therein*. Not any fact, but it must appear what fact has been assumed. Without this requirement, how would it ever be known what facts the Judge may have assumed, or what facts he may have deemed unessential to the support of his legal proposition? The assumption of a fact, as I understand it, is where a legal proposition or conclusion, based upon a given state of facts, is announced, and the Judge fails to require the jury to find the existence of one or more of the facts stated as the basis of his legal conclusion. This was the defect in the cases to which I have referred. His legal conclusion may be entirely correct, but then the error would be in his failure to submit the fact to the jury; and this is the state of case, according to my construction, to which the Act of 1862 and the rule of this Court were intended to apply. A proposition that a plaintiff is entitled to recover upon the jury's finding a certain state of facts, without saying anything in reference to the essential fact, that his claim should be established, is certainly not an assumption of a fact, but is clearly an erroneous proposition of law. How shall we ever know what was in the mind of the Judge, or in reference to what facts he decided, if we do not take his propositions as he states them? And if he states a legal proposition, deduced from a given state of facts, but omits to state an essential fact to make that proposition good, upon what principle can this Court, when called upon to review that proposition, undertake to maintain it by presuming that the Judge had in view other facts beside those stated by him? If this sort of presumption and intendment can be indulged, in support of an instruction, silent as to essential facts to make the legal proposition tenable, then, I certainly think, the sooner the rule is changed the better.

It is said that in these cases where facts are assumed, or are omitted from the instruction, they are generally plain and uncontested, and hence are not deemed necessary to be formally submitted to the jury. But the question is, where does the Judge below or this Court derive authority to deal with facts in that way. A fact that may appear very plain to the Judge may not appear so to the jury; and it does seem, that in exercising such power over the facts, the functions of the jury are disregarded. Where is to be the limit of this discrimination between plain facts, and those not so plain? I am not aware of any power in the Judge to make such discrimination. A party may be precluded from questioning a fact, or a fact may be introduced into the case in such manner as to amount to an admission or concession by the one party or the other; and in such case, it may not be necessary to submit such fact to the finding of the jury; and this Court, in such case, would not reverse the judgment for failure to submit the fact to the jury, whether special exception be taken under the rule or not. But in a case where an instruction is given in favor of a party upon whom the onus rests of proving a material fact, and the Court, in formulating its instruction, wholly omits or ignores that fact, no presumption or intendment can aid such an instruction. And such in my opinion, is this case.

Under the rule, according to my construction of it, if a fact be assumed and is apparent in the instruction, the party against whom the fact operates may then at once, either have the fact properly submitted to the jury, or he may except specially to the instruction because the fact is assumed therein; and if he fails to pursue either course, then it may well be taken in this Court that the fact was conceded to be true. This is the theory upon which the rule is founded, and upon no other could it be sustained. But where the instruction makes no reference to the fact, no special exception can be required to be taken.